**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FORBES ENERGY SERVICES LTD., et al.,[1] | § | Case No. 17-20023 (DRJ) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

**DEBTORS' MEMORANDUM OF LAW IN
SUPPORT OF ORDER APPROVING DEBTORS'
DISCLOSURE STATEMENT FOR, AND CONFIRMING,
DEBTORS' PREPACKAGED JOINT CHAPTER 11 PLAN**

Dated:  March 22, 2017

SNOW SPENCE GREEN LLP
Phil Snow (TX Bar No. 18812600)
Kenneth Green (TX Bar No. 24036677)
2929 Allen Parkway, Ste. 2800
Houston, TX 77019
Telephone:  713/335-4800
Facsimile:  713/335-4902
Email:  philsnow@snowspencelaw.com
         kgreen@snowspencelaw.com

-and-

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (TX Bar No. 24002482)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  rpachulski@pszjlaw.com
         ikharasch@pszjlaw.com
         mlitvak@pszjlaw.com

Counsel for the Debtors

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Forbes Energy Services Ltd. (1100); Forbes Energy Services LLC (6176); C.C. Forbes, LLC (5695); TX Energy Services, LLC (5843); and Forbes Energy International, LLC (6617).  The location of the Debtors' headquarters and service address is 3000 South Business Highway 281, Alice, TX 78332.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

I.     The Restructuring Transactions ................................................................. 2

II.    The Solicitation Process and Voting Results ........................................... 5

III.   The Filing of the Debtors Chapter 11 Cases ........................................... 6

IV.   Filing of the Plan Supplement / Proposed Confirmation Order ............. 8

V.    Objections ................................................................................................. 8

ARGUMENT ..................................................................................................... 11

I.     Approval of the Disclosure Statement is Warranted .............................. 11

    A.   Impaired Creditors Received Sufficient Notice of the Confirmation Hearing and the Objection Deadline .................... 11

    B.   The Disclosure Statement Satisfies the Requirements of the Bankruptcy Code. ................................................................. 13

       1.   The Disclosure Statement Contains Adequate Information ......... 14

       2.   The Disclosure Statement Demonstrates that the Debtors Complied with Applicable Nonbankruptcy Law. ........................ 17

       3.   The Ballots Used to Solicit Holders of Claims Entitled to Vote on the Plan Complied with Bankruptcy Rules. .................. 20

       4.   The Voting Record Date Complied with Bankruptcy Rules. ...... 20

       5.   The Debtors' Solicitation Period Complied with Bankruptcy Rule 3018(b) ............................................................ 21

       6.   The Debtors' Vote Tabulation Was Appropriate ........................ 21

       7.   Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith. ..................................................... 22

II.    The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code. ................................................................................... 22

    A.   The Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1)) ................................................ 22

       1.   The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code. ...................................... 23

       2.   The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code ................................... 25

          a.   Designation of Classes of Claims and Equity Interests (§ 1123(a)(1)). .................................... 25

b.     Specification of Unimpaired Classes (§ 1123(a)(2)). ...... 25

c.     Treatment of Impaired Classes (§ 1123(a)(3)). ............... 25

d.     Equal Treatment within Classes (§ 1123(a)(4)). .............. 25

e.     Means for Implementation (§ 1123(a)(5)). ..................... 26

f.     Issuance of Non-Voting Securities (§ 1123(a)(6)). .......... 27

g.     Directors and Officers (§ 1123(a)(7)). ............................ 27

3.     The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code. .................................... 28

4.     The Plan Complies with Section 1123(d) of the Bankruptcy Code. ........................................................................................ 29

5.     The Plan's Release, Exculpation, and Injunction Provisions Comply with the Bankruptcy Code. ............................................. 29

a.     The Debtor Release is Appropriate and Complies with the Bankruptcy Code. ............................... 30

b.     The Third-Party Release is Appropriate and Complies with the Bankruptcy Code. ............................. 32

c.     The Exculpation Provision is Appropriate and Complies with the Bankruptcy Code. ........................... 35

d.     The Injunction Provision is Appropriate and Complies with the Bankruptcy Code. ............................. 37

B.     The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)). ................................................................ 37

1.     The Debtors Complied with Section 1125 of the Bankruptcy Code. ..................................................................... 38

2.     The Debtors Complied with Section 1126 of the Bankruptcy Code. ..................................................................... 38

C.     The Plan was Proposed in Good Faith (§ 1129(a)(3)). ............................ 39

D.     The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)). ................. 40

E.     The Debtors Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (§ 1129(a)(5)). ..................................... 41

F.     The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6)). ........................................................................................ 43

G.     The Plan is in the Best Interests of All the Debtors' Creditors (§ 1129(a)(7)). ........................................................................................ 43

H.     The Plan is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code. .......................................... 45

I.     The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)). ................................................................. 45

J.     At Least One Class of Impaired, Non-Insider Claims Accepted the Plan (§ 1129(a)(10)). ........................................................... 47

K.     The Plan is Feasible (§ 1129(a)(11)). .................................................... 47

L.     All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)). ............. 48

M.     All Retiree Benefits Will Continue Post-Confirmation (§ 1129(a)(13)). .................................................................................. 49

N.     Sections 1129(a)(14) through 1129(a)(16) Do Not Apply to the Plan. ...................................................................................................... 49

O.     The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code. ........................................................... 50

P.     The Debtors Complied with Section 1129(d) of the Bankruptcy Code. ..................................................................................................... 52

Q.     Modifications to the Plan. ...................................................................... 52

R.     Good Cause Exists to Waive the Stay of the Confirmation Order. ......... 53

III.     The Personal Injury/Property Damage Objections and McChristian Objection to the Plan Should Be Overruled to the Extent Such Objections Are Not Consensually Resolved Prior to the Confirmation Hearing .................. 54

CONCLUSION ............................................................................................................... 57

# CASES

*Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.),*
701 F.3d 1031 (5th Cir. 2012) ................................................................................ 32

*B.D. Int'l Disc. Corp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Disc. Corp.),*
701 F.2d 1071 n.8 (2d Cir. 1983).......................................................................... 40

*Bank of Amer. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,*
526 U.S. 434 n.13 (1999) ................................................................................ 44, 50

*Bank of New York Trust Co. v. Official Unsecured Creditors Comm. (In re Pacific Lumber),*
584 F.3d 229 (5th Cir. 2009) ...................................................................... 32, 36, 37

*Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.),*
764 F.2d 406 (5th Cir. 1985) ................................................................................. 39

*Century Glove, Inc. v. First Amer. Bank of New York,*
860 F.2d 94 (3d Cir. 1988)......................................................................... 15, 39, 44

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship),*
116 F.3d 790 (5th Cir. 1997) ........................................................................... 39, 47

*Flintkote Co.,*
486 B.R. 99 (Bankr. D. Del. 2012) ....................................................................... 47

*Floyd v. Hefner,*
2006 WL 2844245, at *30 (S.D. Tex. Sept. 29, 2006) .......................................... 15

*FOM Puerto Rico v. Dr. Barnes EyeCenter, Inc.,*
No., 05-00333, 2006 WL 228982, at *4 (N.D. Tex. Jan. 31, 2006) ....................... 33

*In re Abbotts Dairies of Pa., Inc.,*
788 F.2d 143 n.5 (3d Cir. 1986)............................................................................ 39

*In re Adelphia Commc'ns. Corp.,*
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................. 44

*In re Ambanc La Mesa L.P.,*
115 F.3d 650 (9th Cir. 1997) ................................................................................ 50

*In re American Solar King Corp.,*
90 B.R. 808 (Bankr. W.D. Tex. 1988).................................................................. 53

*In re Applegate Prop., Ltd.,*
133 B.R. 827 (Bankr. W.D. Tex. 1991) ................................................................ 15

*In re Armstrong World Indus., Inc.,*
348 B.R. 111 (D. Del. 2006)........................................................................... 11, 23

*In re Bigler LP,*
442 B.R. 537 (Bankr. S.D. Tex. 2010) ................................................................. 30

*In re Camp Arrowhead, Ltd.,*
451 B.R. 678 (Bankr. W.D. Tex. 2011) ........................................................... 32, 37

*In re Capmark Fin. Grp. Inc.,*
No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011)...... 47

*In re Chapel Gate Apartments, Ltd.,*
64 B.R. 569 (Bankr. N.D. Tex. 1986).................................................................... 41

*In re Conseco Inc.,*
301 B.R. 525 (Bankr. N.D. Ill. 2003) ................................................................... 34

*In re Cross Canyon Energy Corp.,*
No. 10-30747 (Bankr. S.D. Tex. Mar. 11, 2010) ................................................... 21

*In re Davis Petroleum Corp.*,
No. 06-20152 (Bankr. S.D. Tex. Mar. 10, 2006) ...................................................... 21

*In re Energy & Exploration Partners, Inc.*,
No. 15-44931, Confirmation Hr'g Tr. at 44 (Bankr. N.D. Tex. Apr. 21, 2016) ...................... 33

*In re Energy Partners Ltd.*,
No. 09-32957, 2009 WL 2898876, at *19 (Bankr. S.D. Tex. Aug. 3, 2009) ......................... 54

*In re Exide Technologies*,
303 B.R. 48 (Bankr. D. Del. 2003) ........................................................................ 51

*In re Future Energy Corp.*,
83 B.R. 470 n.39 (Bankr. S.D. Ohio 1988) ............................................................... 51

*In re General Homes Corp.*,
134 B.R. 853 (Bankr. S.D. Tex. 1991) ............................................................... 30, 31

*In re Global Safety Textiles Holdings LLC*,
No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) ..................... 53

*In re Heritage Org., LLC*,
375 B.R. 230 (Bankr. N.D. Tex. 2007) .................................................................... 30

*In re Hunt*,
146 B.R. 178 (Bankr. N.D. Tex. 1992) .................................................................... 12

*In re Idearc Inc.*,
423 B.R. 138 (Bankr. N.D. Tex. 2009) .................................................................... 54

*In re Indianapolis Downs*, LLC,
486 B.R. 286 (Bankr. D. Del. 2013) ....................................................................... 34

*In re J.D. Mfr., Inc.*,
2008 WL 4533690, at *2 (Bankr. S.D. Tex. Oct. 2, 2008) ............................................. 15

*In re Lakeside Global II Ltd.*,
116 B.R. 499 (Bankr. S.D. Tex. 1989) ................................................................ 11, 47

*In re Lapworth*,
No. 97-34529 (DWS), 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ..................... 38

*In re Lone Star Utils. LLC*,
2014 WL 4629129, at * 2 (Bankr. N.D. Tex. Sept. 15, 2014) ......................................... 11

*In re MCorp Fin., Inc.*,
137 B.R. 219 (Bankr. S.D. Tex. 1992) .................................................................... 51

*In re Metrocraft Publ'g. Servs., Inc.*,
39 B.R. 567 (Bankr. N.D. Ga. 1984) ...................................................................... 16

*In re Mirant Corp.*,
348 B.R. 725 (Bankr. N.D. Tex. 2006) .................................................................... 30

*In re NII Holdings, Inc.*,
288 B.R. 356 (Bankr. D. Del. 2002) ....................................................................... 39

*In re Nutritional Sourcing Corp.*,
398 B.R. 816 (Bankr. D. Del. 2008) ....................................................................... 23

*In re Placid Oil Co.*,
753 F.3d 151 (5th Cir. 2014) ............................................................................... 11

*In re Prussia Assocs.*,
322 B.R. 572 (Bankr. E.D. Pa. 2005) ..................................................................... 48

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000) ........................................................................... 36, 39

*In re RAAM Global Energy Co.*,
   No. 15-35615, Confirmation Hr'g Tr. at 61 (Bankr. S.D. Tex. Jan. 28, 2016) ........................ 33
*In re S&W Enter.*,
   37 B.R. 153 (Bankr. N.D. Ill. 1984) ............................................................................... 23
*In re Scioto Valley Mortg. Co.*,
   88 B.R. 168 (Bankr. S.D. Ohio 1988) ............................................................................. 16
*In re Sea Garden Motel & Apartments*,
   195 B.R. 294 (D. N.J. 1996) ......................................................................................... 48
*In re Sentry Operating Co. of Texas, Inc.*,
   264 B.R. 850 (Bankr. S.D. Tex. 2001) ........................................................................... 53
*In re Southcross Holdings, LP*,
   No. 16-20111 (Bankr. S.D. Tex. Apr. 11, 2016) ............................................................. 33
*In re Texas Tamale Co., Inc.*,
   219 B.R. 732 (Bankr. S.D. Tex. 1998) ........................................................................... 12
*In re Transcoastal Corp.*,
   No. 15-34956 (Bankr. N.D. Tex. Dec. 18, 2015) ............................................................. 21
*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011) ............................................................................... 48
*In re U.S. Brass Corp.*,
   194 B.R. 420 (Bankr. E.D. Tex. 1996) ...................................................................... 15, 16
*In re Vitro Asset Corp.*,
   2013 WL 6044453, at * 5 (Bankr. N.D. Tex. Nov. 14, 2013) ............................................. 23
*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012) ...................................................................................... 39, 47
*In re Walat Farms, Inc.*,
   70 B.R. 330 (Bankr. E.D. Mich. 1987) ........................................................................... 51
*In re Warren Resources, Inc.*,
   No. 16-32760 (Bankr. S.D. Tex. September 14, 2016) ...................................................... 33
*In re Westland Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*,
   157 B.R. 100 (S.D. Tex. 1993) ...................................................................................... 16
*In re Wool Growers Cent. Storage Co.*,
   371 B.R. 768 (Bankr. N.D. Tex. 2007) ...................................................................... 33, 37
*In re Worldcom, Inc.*,
   No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) ............. 38
*In re Zale Corp.*,
   62 F.3d at 760 ............................................................................................................ 33
*John Hancock*,
   987 F.2d at 157 n.5 ..................................................................................................... 50
*Kane v. Johns-Manville Corp.*,
   843 F.2d 636, 649 (2d Cir. 1988) .................................................................................. 47
*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
   337 F.3d 314 (3d Cir. 2003) ......................................................................................... 15
*Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*,
   150 F.3d 503 (5th Cir. 1998) .............................................................................. 15, 31, 41
*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................... 11

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984) ................................................................................. 40
*Phx. Petroleum*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001) ..................................................... 16
*Pilgrim's Pride*,
    2010 WL 200000, at *5 ........................................................................... 37
*Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*,
    761 F.2d 1374 (9th Cir. 1985) ................................................................ 47
*Republic Supply Co. v. Shoaf*,
    815 F.2d 1046 (5th Cir. 1987) ................................................................ 33
*Sequa Corp. v. Christopher (In re Christopher)*,
    249 F.3d 383 (5th Cir. 2001) .................................................................. 12
*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*,
    844 F.2d 1142 (5th Cir. 1988) ................................................................ 15

## STATUTES

11 U.S.C. § 101 ........................................................................................... 41
11 U.S.C. § 1114 ......................................................................................... 49
11 U.S.C. § 1122 ........................................................................... 23, 25, 52
11 U.S.C. § 1123 ................................................................................. passim
11 U.S.C. § 1127 ................................................................................. 52, 53
11 U.S.C. § 1145 ................................................................................. 18, 19
11 U.S.C. § 157 ........................................................................................... 36
11 U.S.C. § 328 ........................................................................................... 41
11 U.S.C. § 330 ........................................................................................... 41
11 U.S.C. § 365 ............................................................................ 28, 29, 53
11 U.S.C. § 507 ............................................................................ 45, 46, 48

## RULES

Fed. R. Bankr. P. 2002 ............................................................................... 11
Fed. R. Bankr. P. 3017 .......................................................................... 11, 20
Fed. R. Bankr. P. 3018 .......................................................................... 20, 21
Fed. R. Bankr. P. 3019 .......................................................................... 52, 53
Fed. R. Bankr. P. 3020 ............................................................................... 53
Fed. R. Bankr. P. 506 ...................................................................... 17, 18, 19
Fed. R. Bankr. P. 6004 ............................................................................... 53
Fed. R. Bankr. P. 6006 ............................................................................... 53
Fed. R. Bankr. P. 701 ................................................................................. 19

## SECONDARY SOURCES

31 S. Rep. No. 95-989, at 126, *reprinted in* 1978 U.S.C. C.A.N. 5787, 5912 (1978) ................. 23
7 Collier on Bankruptcy ............................................................................... 42
H.R. Rep. No. 95-595, at 412, reprinted in 1978 U.S.C. C.A.N. 5963, 6368 (1977) ................. 23

The above-captioned debtors (collectively, the "Debtors") submit this memorandum of law in support of approval of their disclosure statement [Docket No. 8] (the "Disclosure Statement") and confirmation of their joint prepackaged chapter 11 plan [Docket No. 9] (as modified, amended, or supplemented from time to time, the "Plan"),[2] pursuant to sections 1125, 1126, and 1129, respectively, of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

The Plan is a pre-packaged plan that resulted from extensive prepetition negotiations with certain Holders of Senior Unsecured Notes Claims and has the overwhelming support of such Class based on a solicitation that occurred prepetition.  The Debtors believe that the Plan provides the best restructuring alternative available to these estates and is comprised of the following key elements:

- providing  a 100% recovery to Allowed General Unsecured Claims and all creditors who are Unimpaired under the Plan;

- deleveraging the Debtors' balance sheet by converting over $300 million of the Senior Unsecured Notes, inclusive of accrued interest, to new equity in the Reorganized Debtors;

- implementing a new $50 million exit financing facility to be provided to the Reorganized Debtors by certain of the Holders of Senior Unsecured Notes Claims; and

- extinguishing all the existing equity interests in Forbes Energy Services Ltd. ("FES Ltd.").

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

Having completed the Debtors' solicitation prepetition and provided broad notice of the Plan and an opportunity to object to all stakeholders, the Debtors are now in position to confirm the Plan and consummate their restructuring.

The factual basis for confirmation of the Plan will be provided through the testimony of: (a) L. Melvin Cooper, the Debtors' Chief Financial Officer and Senior Vice President; (b) Marc Liebman of Alvarez & Marsal North America, LLC; and (c) Robert J. White of Jefferies LLC. The Debtors previously filed the Declaration of James Lee of Kurtzman Carson LLC with respect to the solicitation of votes and tabulation of ballots on the Plan, which the Court previously admitted into evidence at the first day hearing in these cases.

## I.      The Restructuring Transactions

1.      Facing an exceedingly difficult market environment, the Debtors have managed to negotiate a comprehensive balance sheet restructuring that will position the Debtors for long-term success.  This negotiated resolution was set forth in the Restructuring Support Agreement (the "Restructuring Support Agreement") between the Debtors and holders of approximately 65.40% in outstanding principal amount of the Senior Unsecured Notes (the "Supporting Noteholders").  The Debtors commenced these chapter 11 cases to implement the consensual, prepackaged chapter 11 plan of reorganization contemplated by the Restructuring Support Agreement.  The Disclosure Statement and the Plan are the products of extensive good-faith, arm's-length negotiations between the Debtors and the Supporting Noteholders that began in earnest months ago.

2.      The Plan itself enjoys nearly unanimous support from Holders of the Senior Unsecured Notes Claims, which were the only Class of creditors entitled to vote on the Plan. Holders of approximately 87.14% in principal amount of the Senior Unsecured Notes voted in favor of the Plan.  Of the holders of Senior Unsecured Notes Claims who submitted ballots, approximately 99.46% in amount and approximately 93.75% in number voted to accept the Plan. The Plan will effectuate a debt-for-equity exchange of the Class 4 Senior Unsecured Notes Claims.  Specifically, holders of the Class 4 Senior Unsecured Notes Claims will be entitled to receive, on account of their respective prepetition unsecured claims, (i) their *pro rata* share of 100% of the new common stock of reorganized FES Ltd., subject to dilution by shares issued or available for issuance under a management incentive plan (the "Management Incentive Plan"), and (ii) their *pro rata* share of cash in the amount of $20 million.  The Debtors' secured prepetition obligations consisting primarily of the obligations under the Debtors' senior secured indebtedness with Regions Bank will either be reinstated or paid pursuant to the terms of the Plan.  Allowed general unsecured claims also will be paid in full in the ordinary course to the extent not previously paid or satisfied in the course of the Debtors' chapter 11 cases.  The existing equity interests in FES Ltd. (which include common stock, preferred stock, awards under FES Ltd.'s 2012 Incentive Compensation Plan and the preferred stock purchase rights under FES Ltd.'s rights agreement, as amended) will be extinguished.

3.      The Plan will be implemented, in part, through the consummation of a first lien term loan facility in the aggregate principal amount of $50,000,000 (the "Exit Facility").  The lenders under the Exit Facility will be participating holders of the Class 4 Senior Unsecured

Notes Claims.  The Exit Facility will have a first lien on substantially all of the assets of the

Debtors.  On December 23, 2016, the Voting Agent transmitted to the Nominees (defined below)

for each Eligible Offeree a subscription form (the "Subscription Form"), whereby each Eligible

Offeree had the opportunity exercise its opportunity to subscribe for such holder's pro rata

portion of the Exit Facility (the "Subscription Option").  The deadline to exercise the

Subscription Option by returning the Subscription Form was January 25, 2017 (the "Subscription

Deadline").  As of the Subscription Deadline, approximately $41 million of the $50 million total

Exit Facility had been subscribed.

4.     On December 21, 2016, the Debtors and certain large holders of the Senior

Unsecured Notes consisting of:  Ascribe Capital LLC; Courage Capital Management, LLC;

Pacific Investment Management Company LLC; Phoenix Investment Adviser LLC; and Solace

Capital Partners, L.P. (together, the "Backstop Lenders"), executed that certain *Backstop*

*Agreement* attached as Exhibit C to the Restructuring Support Agreement (the "Backstop

Agreement") and entered into by the Backstop Lenders in the form thereof with such

amendments and modifications as are permitted thereunder.  Pursuant to the Backstop

Agreement, the Backstop Lenders agreed to backstop, subject to the terms thereof, the Exit

Facility to ensure that the entire Exit Facility is funded.  Pursuant to the Backstop Agreement, the

Backstop Lenders will backstop the remaining approximately $9 million of the Exit Facility.

5.     The Plan further contemplates that, upon the effective date thereof, reorganized

FES Ltd. will adopt and implement a management incentive plan that provides for the issuance

of shares of new common stock to the officers and other key employees of reorganized FES Ltd. in an amount up to 12.5% of the aggregate equity in FES Ltd.

## II.      The Solicitation Process and Voting Results

6.      The Debtors commenced their prepetition solicitation of Holders of Senior Unsecured Notes Claims regarding the Plan on December 23, 2016.  On such date, the Debtors caused their solicitation agent, Kurtzman Carson LLC (the "Solicitation Agent"), to distribute packages containing the Disclosure Statement, the Plan and ballots (the "Solicitation Package") to the brokers, banks, dealers, agents, or other nominees (each of the forgoing, a "Nominee") that held Class 4 Senior Unsecured Notes Claims, as of the Voting Record Date of December 19, 2016, on behalf of the underlying beneficial holders of these securities (the "Beneficial Holders") with instructions to distribute solicitation packages to respective Beneficial Holders within five (5) business days of receiving the Solicitation Packages.  The Solicitation Agent also separately distributed the Subscription Form to the Nominees for distribution to the Beneficial Holders in order to enable Eligible Offerees to exercise the Subscription Option prior the Subscription Deadline.

7.      Holders of Senior Unsecured Notes Claims that received the Solicitation Package were directed in the Disclosure Statement and ballots to follow the instructions contained in the ballots to complete and submit their respective ballots to cast a vote to accept or reject the Plan. The Disclosure Statement and applicable ballot expressly provide that such holder needed to submit its ballot so that it was actually received by the Solicitation Agent on or before the Voting Deadline in order to be counted.  Aside from the Holders of Senior Unsecured Notes Claims, no

other Holders of Claims or Equity Interests were provided with a Solicitation Package because

they are either:  (a) unimpaired under, and conclusively presumed to have accepted, the Plan

under section 1126(f) of the Bankruptcy Code; or (b) impaired, entitled to receive no distribution

on account of such claims or interests under the Plan, and therefore deemed to have rejected the

Plan pursuant to section 1126(g) of the Bankruptcy Code.

8.      As of the Petition Date, holders of approximately 99.46% of the Class 4 Senior

Unsecured Notes Claims in amount and 93.75% in number voted to accept the Plan.  Holders of

Class 1 Other Secured Debt Claims; Class 2 Other Secured Debt Claims; Class 3 Senior Secured

Debt Claims; Class 5 General Unsecured Claims; Class 6 Intercompany Claims; and Class 8

Equity Interests in Subsidiaries are unimpaired and are presumed to have accepted the Plan.

Class 7 Equity Interests in Parent will be cancelled and will not receive any distribution on

account of such interests.  Class 7 is therefore deemed to reject the Plan and was not entitled to

vote on the Plan.

### III.    The Filing of the Debtors Chapter 11 Cases

9.      On January 22, 2017 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.

10.     On the same day, the Debtors filed the *Emergency Motion of Debtors for Entry of*

*an Order (I)  Scheduling a Combined Disclosure Statement Approval and Plan Confirmation*

*Hearing; (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related*

*Procedures; (III) Approving the Solicitation Procedures; (IV)  Approving the Confirmation*

*Hearing Notice; (V) Directing That a Meeting of Creditors Not Be Convened; and (VI)  Granting*

*Related Relief* [Docket No. 7] (the "Scheduling Motion").  Pursuant to the Scheduling Motion, among other requests for relief, the Debtors sought a combined hearing on approval of the Disclosure Statement and confirmation of the Plan.

11.     On January 25, 2017, the Court entered the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (III) Approving the Solicitation Procedures; (IV) Approving the Confirmation Hearing Notice; (V) Directing That a Meeting of Creditors Not Be Convened; and (VI)  Granting Related Relief* [Docket No. 61] (the "Scheduling Order").  Pursuant to the Scheduling Order, the Court (a) established February 27, 2017, at 5:00 p.m. (prevailing Central Time), as the deadline to object to the Disclosure Statement and the Plan (the "Objection Deadline") and (b) approved the form and manner of the confirmation hearing notices (the "Notice" and the "Publication Notice").

12.     On January 27, 2017, the Debtors caused the Solicitation Agent to serve the Notice in accordance with the terms of the Scheduling Order.  *Certificates of Service* [Docket Nos. 101 and 102].  The Debtors also caused the Publication Notice to be published in the *Wall Street Journal (National Edition)*, the *Houston Chronicle* and the *Corpus Christi Caller-Times* on January 31, 2017.  *Affidavit of Publication* [Docket No. 117].  The Debtors subsequently continued the confirmation hearing pursuant to separate notices and proofs of service filed with the Court.

13.     The Debtors completed their solicitation on January 18, 2017 (the "Voting Deadline"), four (4) days prior the Petition Date.  The Debtors completed their final tabulation of

the ballots prior to the Petition Date, following a complete review and audit of all ballots received.  As set forth above, Class 4 Senior Unsecured Notes Claims, the only voting class, overwhelmingly voted to accept the Plan by a significant margin over what is required to constitute an accepting class for purposes of Plan approval under the Bankruptcy Code.

**IV.**     **Filing of the Plan Supplement / Proposed Confirmation Order**

14.     On March 22, 2017, the Debtors filed the Plan Supplement, which includes the following exhibits: (a) Amended Organizational Documents of Reorganized Parent; (b) Exit Facility Documents; (c) Management Employment Agreements (John Crisp, Charles C. Forbes, Jr., L. Melvin Cooper, and Steve Macek); (d) Management Incentive Plan; (e) Registration Rights Agreement; (f) Rejected Executory Contracts and Unexpired Leases; (g) Disclosure of Directors of Reorganized Parent and Officers of Reorganized Debtors and Nature of Compensation Payable Thereto; (h) Preserved Causes of Action of Debtors Against Third Parties; and (i) Regions Letter of Credit Agreement.

15.     The Debtors propose that the Court enter an order approving the Disclosure Statement and confirming the Plan in the form attached hereto as **Exhibit A** (the "Proposed Confirmation Order").  An electronic version of the Proposed Confirmation Order will be provided to the Court prior to the Confirmation Hearing.

**V.**     **Objections**

16.     The Debtors received seven (7) formal objections with respect to confirmation of the Plan from:  (a) Javier Martinez, a litigant [Docket. No. 148], (b) Carroll L. Lee, individually, and certain related parties (together, the "Lee Parties"), as litigants [Docket No. 149], (c)

Reynaldo Davila, Jr., et al., as litigants [Docket No. 150], joining in the objections of Mr.

Martinez and the Lee Parties; (d) Felix Venegas, Jr., a litigant [Docket No. 163], joining in the

objection of the Lee Parties (the "Venegas Objection"); (e) Orlando Rey Mireles and Jose

Reynaldo San Miguel, Jr., as litigants [Docket No. 152], and joining in the objection of the Lee

Parties; (f) Francisco Javier Gonzalez, Individually and As Representative of Estate of Hortencia

Monroy-Hernandez, Deceased, and As of Next Friend of KYG, a Minor, and Adan Monroy-

Hernandez and Maria Felix Hernandez Ledezma, as litigants [Docket No. 189-1] (collectively,

the "Gonzalez Parties");  and (g) Davis McChristian, Elmer McChristian and Taylor Whitaker,

as lessors (collectively, the "McChristian Parties"), with respect to that certain lease by and

between the McChristian Parties and Alice Environmental Services, LP (the "McChristian

Lease), and objecting to both confirmation of the Plan and the rejection of the  McChristian

Lease [Docket. Nos. 153-1, 154 and 155] (together, the "McChristian Objection").

17.    Each of the parties who filed the objections listed above in subparagraphs 16(a)

through 16(f) (collectively, the "Personal Injury/Property Damage Objections") have alleged

claims arising from either personal injury,  real or personal property damage, or rejection damage

claims against one or more of the Debtors.  The parties asserting the Personal Injury/Property

Damage Objections have also requested the inclusion of language in the Proposed Confirmation

Order that clarifies, among other things, that the Plan and Confirmation Order will not impair or

otherwise impact the non-bankruptcy claims that are the subject of the Personal Injury/Property

Damage Objections that are pending in various non-bankruptcy forums.  This is consistent with

terms of the Plan because the claims relating to the Personal Injury/Property Damage Objections

constitute Class 5 General Unsecured Claims, which are unimpaired under the Plan. Thus, the ultimate validity (or invalidity, as the case may be) of these claims will be determined in accordance with applicable non-bankruptcy law.

18.     As of the date hereof, the Debtors have resolved five of the six Personal Injury/Property Damage Objections with the following parties: (a) Javier Martinez (as well as the related motion for relief from the automatic stay filed by this party); (b) the Lee Parties; (c) Reynaldo Davila, Jr.; (d) Orlando Rey Mireles and Jose Reynaldo San Miguel, Jr.; and (e) the Gonzalez Parties. The Debtors are also in the process of exchanging and negotiating language to the Proposed Confirmation Order with the only unresolved Personal Injury/Property Damage Objection (i.e. the Venegas Objection) and will endeavor to resolve this objection in advance of the Confirmation Hearing. The Debtors have included proposed language in the Proposed Confirmation Order that they believe may adequately address and resolve the Venegas Objection, although this language has not been agreed to by the parties. The Debtors are also attempting to resolve the McChristian Objection.

19.     In addition, the Debtors received informal objections from the following parties: the Texas Comptroller, the United States of America, and the Chubb Companies (collectively, the "Informal Objections"). The Debtors have resolved the issues raised by each of the parties who provided the Informal Objections and have inserted mutually consensual language in the Proposed Confirmation Order resolving each Informal Objection.

## ARGUMENT

20.     This brief is divided into three parts.  ***First***, the Debtors request approval of the Disclosure Statement and a finding that the Debtors complied with the Scheduling Order. ***Second***, the Debtors set forth their arguments demonstrating that the Plan satisfies section 1129 of the Bankruptcy Code and, accordingly, request that the Court confirm the Plan and approve the Restructuring Support Agreement and Backstop Agreement.[3]  ***Third***, the Debtors respond to any Personal Injury/Property Damage Objections and the McChristian Objection.

## I.      Approval of the Disclosure Statement is Warranted.

### A.      Impaired Creditors Received Sufficient Notice of the Confirmation Hearing and the Objection Deadline.

21.     Under Bankruptcy Rule 3017(a), a hearing on the adequacy of the disclosure statement generally requires 28 days' notice.[4]  Similarly, Bankruptcy Rule 2002(b) provides that parties in interest should receive 28 days' notice of the objection deadline and the hearing to consider approval of the disclosure statement.  Courts in the Fifth Circuit and elsewhere have adopted the general rule that due process requires "notice reasonably calculated, under all the circumstances, to inform interested parties of the pendency of a proceeding."[5]  When evaluating

---

[3]  *See In re Lakeside Global II Ltd.*, 116 B.R. 499, 505 (Bankr. S.D. Tex. 1989) ("In order to confirm a reorganization plan, the bankruptcy court must be satisfied that the plan complies with all of the requirements of § 1129(a) of the Bankruptcy Code"); *In re Lone Star Utils. LLC*, 2014 WL 4629129, at * 2 (Bankr. N.D. Tex. Sept. 15, 2014) ("The Debtor has the burden of proving the elements of Bankruptcy Code section 1129(a) by a preponderance of the evidence"); *see also In re Armstrong World Indus., Inc.*, 348 B.R. 111, 119–20 (D. Del. 2006) (stating that a court must determine whether a plan meets the requirements of section 1129 in order to confirm such plan).

[4]  Fed. R. Bankr. P. 3017(a) ("the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto").

[5]  *In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

the notice and the sufficiency thereof, courts will consider "[f]irst, whether the notice apprised the claimant of the pendency of the action, and second, whether it was sufficiently timely to permit the claimant to act."[6]  Whether a particular method of notice is reasonably calculated to inform interested parties is determined on a case-by-case basis.[7]  Notably, the Debtors have <u>not</u> sought to shorten the periods of time provided under Bankruptcy Rules 3017(a) and 2002(b) with respect to notice of the hearing to consider approval of the Disclosure Statement and the Plan.

22.     On December 23, 2016, the Solicitation Agent transmitted copies of the Solicitation Package, which included the Plan and the Disclosure Statement, to the Nominees for all Beneficial Holders of the Senior Unsecured Notes Claims.  The deadline for submission of ballots on the Plan was January 18, 2017, twenty-six (26) days after the commencement of the solicitation process.

23.     On January 25, 2017, the Court entered the Scheduling Order, which approved the prepetition solicitation process and set objection and reply deadlines for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan, and the notice requirements related thereto.  Further, the Court approved the form of Notice and Publication Notice, and service thereof.

24.     On January 27, 2017, the Debtors transmitted the Notice to all parties on the Debtors' creditor matrix informing the recipients of, among other things:  (a) the commencement

---

[6]  *Sequa Corp. v. Christopher (In re Christopher)*, 249 F.3d 383, 518 (5th Cir. 2001) (applying the two-part test); *In re Texas Tamale Co., Inc.*, 219 B.R. 732, 739-40 (Bankr. S.D. Tex. 1998) (same).

[7]  *In re Hunt*, 146 B.R. 178, 182 (Bankr. N.D. Tex. 1992) ("Whether a particular method of notice is reasonably calculated to reach interested parties depends upon the particular circumstances of each case").

of these chapter 11 cases; (b) the date and time set for the Confirmation Hearing; and (c) the

Objection Deadline.  *Certificates of Service* [Docket Nos. 101 and 102].

25.     Further, on January 31, 2017, the Debtors caused the Publication Notice to be

published in the *Wall Street Journal (National Edition)*, the *Houston Chronicle*, and the *Corpus*

*Christi Caller-Times.  Affidavit of Publication* [Docket No. 117].  Both the Notice and

Publication Notice included instructions regarding how to obtain the Plan and the Disclosure

Statement through the Debtors' restructuring website, http://kccllc.net/forbes, or the Court's

PACER website, www.txs.uscourts.gov.

26.     Accordingly, for the reasons set forth below, the Debtors submit that all parties

affected by the Plan were provided with adequate notice of the combined hearing to consider

approval of the Disclosure Statement and confirmation of the Plan and the Objection Deadline.

**B.     The Disclosure Statement Satisfies the Requirements of the Bankruptcy Code.**

27.     To determine whether a prepetition solicitation of votes to accept or reject a plan

should be approved, the Court must determine whether the solicitation complied with sections

1125 and 1126(b) of the Bankruptcy Code, and Bankruptcy Rules 3017(d), 3017(e), 3018(b), and

3018(c).

28.     Section 1125(g) of the Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a
> holder of a claim or interest if such solicitation complies with
> applicable nonbankruptcy law and if such holder was solicited
> before the commencement of the case in a manner complying with
> applicable nonbankruptcy law.

11 U.S.C. § 1125g).

29.     Section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the
> plan before the commencement of the case under this title is
> deemed to have accepted or rejected such plan, as the case may be,
> if—(1) the solicitation of such acceptance or rejection was in
> compliance with any applicable nonbankruptcy law, rule, or
> regulation governing the adequacy of disclosure in connection with
> such solicitation; or (2) if there is not any such law, rule, or
> regulation, such acceptance or rejection was solicited after
> disclosure to such holder of adequate information, as defined in
> section 1125(a) of this title.

11 U.S.C. § 1126(b).

30.     Prepetition solicitations must therefore either comply with applicable federal or

state securities laws and regulations (including the registration and disclosure requirements

thereof) or, if such laws and regulations do not apply, the solicited holders must receive

"adequate information" as defined in section 1125(a) of the Bankruptcy Code.  As discussed

below, the Debtors satisfied sections 1125(g) and 1126(b), as applicable, of the Bankruptcy

Code.

### 1.     The Disclosure Statement Contains Adequate Information.

31.     The primary purpose of a disclosure statement is to provide material information,

or "adequate information," that allows parties entitled to vote on a proposed plan to make an

informed decision about whether to vote to accept or reject the plan.[8]  "Adequate information" is

a flexible standard, based on the facts and circumstances of each case.[9]  Courts within the Fifth

Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for

the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad

discretion of the court.[10]

> 32.   Courts look for certain information when evaluating the adequacy of the

disclosures in a proposed disclosure statement, including:

> i.   the events which led to the filing of a bankruptcy petition;
>
> ii.   the relationship of a debtor with the affiliates;

---

[8]  *See, e.g., In re J.D. Mfr., Inc.*, 2008 WL 4533690, at *2 (Bankr. S.D. Tex. Oct. 2, 2008) ("Adequacy of information is a determination that is relative both to the entity (e.g. assets/business being reorganized or liquidated) and to the sophistication of the creditors to whom the disclosure statement is addressed."); *In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996) ("The purpose of the disclosure statement is . . . to provide enough information to interested persons so they may make an informed choice."); *In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (Bankr. W.D. Tex. 1991) ("A court's legitimate concern under Section 1125 is assuring that hypothetical reasonable investors receive such information as will enable them to evaluate for *themselves* what impact the information might have on their claims and on the outcome of the case.") (emphasis in original).  *See also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) ("Under 11 U.S.C. § 1125(b), a party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing adequate information to enable a creditor to make an informed judgment about the Plan.") (internal quotations omitted); *Century Glove, Inc. v. First Amer. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) ("[S]ection 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote.").

[9]  11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records."); *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes adequate information with respect to a particular disclosure statement . . . the kind and form of information are left essentially to the judicial discretion of the court and that the information required will necessarily be governed by the circumstances of each case.") (internal citations omitted); *Floyd v. Hefner*, 2006 WL 2844245, at *30 (S.D. Tex. Sept. 29, 2006) (noting that what constitutes "adequate information" is a flexible standard); *Applegate Prop.*, 133 B.R. at 829 ("The issue of adequate information is usually decided on a case by case basis and is left largely to the discretion of the bankruptcy court.").

[10]  *See, e.g., Cajun Elec. Power Coop.*, 150 F.3d at 518 (Courts are vested with wide discretion to determine whether a disclosure statement contains "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.").

---

iii.    a description of the available assets and their value;

iv.    the anticipated future of the company;

v.    the source of information stated in the disclosure statement;

vi.    the present condition of a debtor while in chapter 11;

vii.    the claims asserted against a debtor;

viii.    the estimated return to creditors under a chapter 7 liquidation;

ix.    the future management of a debtor;

x.    the chapter 11 plan or a summary thereof;

xi.    the financial information, valuations, and projections relevant to the claimants' decision to accept or reject the chapter 11 claim;

xii.    the information relevant to the risks posed to claimants under the plan;

xiii.    the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

xiv.    the litigation likely to arise in a nonbankruptcy context; and

xv.    the tax attributes of a debtor.[11]

33.    The Disclosure Statement contains adequate information.  For instance, the Disclosure Statement contains descriptions and summaries of, among other things: (a) both the Plan and the Debtors' related reorganization efforts; (b) certain events and relevant negotiations preceding the commencement of these chapter 11 cases; (c) the key terms of the restructuring; (d) risk factors affecting the Plan, including risks related to the restructuring transactions contemplated under the Plan, risks related to the Debtors' businesses, and risks related to the

---

[11] *U.S. Brass*, 194 B.R. at 424–25; *In re Westland Dev. Corp. v. MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (same); *In re Metrocraft Publ'g. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).  Disclosure regarding all topics is not necessary in every case.  *U.S. Brass*, 194 B.R. at 425; *Phx. Petroleum*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

reorganized Debtors; (e) a liquidation analysis setting forth the estimated return that holders of

Claims and Equity Interests would receive in a hypothetical chapter 7 case; (f) financial

projections and valuation information that would be relevant to a creditor's determination of

whether to accept or reject the Plan; and (g) federal tax law consequences of the Plan.  In

addition, the Disclosure Statement and the Plan were subject to review and comment by the

signatories to the Restructuring Support Agreement.

### 2. The Disclosure Statement Demonstrates that the Debtors Complied with Applicable Nonbankruptcy Law.

34.     Under section 1126(b) of the Bankruptcy Code (cited above), prepetition

solicitation must either comply with generally applicable federal or state securities laws and

regulations (including the registration and disclosure requirements thereof) or, if such laws and

regulations do not apply, the solicited holders must receive "adequate information" under section

1125 of the Bankruptcy Code.

35.     The Debtors respectfully submit that the prepetition solicitation regarding the

issuance of the New Common Stock to Holders of Class 4 Senior Unsecured Notes Claims is

exempt from registration under the Securities Act of 1933, as amended (the "Securities Act"),

and similar state securities or "blue sky" laws ("Blue Sky Laws") by virtue of sections 3(a)(9)

and/or 4(a)(2) and 18(b)(4)(E) of the Securities Act and Rule 506 of Regulation D under the

Securities Act.  Section 3(a)(9) of the Securities Act provides for an exemption from registration

when an issuer offers new securities in exchange for its own outstanding securities, such

exchange is made only to existing security holders, no compensation or other remuneration is

paid for soliciting such exchange offer, and the existing security holders are not asked to part

with anything of value except the outstanding securities.  Section 18(b)(4)(E) of the Securities

Act provides, among other things, that Blue Sky Laws will not apply to securities that are exempt

from federal registration under section 3(a)(9) of the Securities Act.  Section 4(a)(2) of the

Securities Act exempts transactions by an issuer not involving any public offering, and Rule 506

of Regulation D provides a safe harbor under section 4(a)(2) for transactions that meet certain

requirements, including that the investors participating therein qualify as "accredited investors"

within the meaning of U.S. securities laws.  Because the prepetition solicitation regarding the

issuance of the New Common Stock to Holders of Class 4 Senior Unsecured Notes Claims

satisfies the requirements of sections 3(a)(9) and/or 4(a)(2) and 18(b)(4)(E) of the Securities Act

and Rule 506 of Regulation D under the Securities Act, the Debtors' prepetition solicitation is

exempt from the registration requirements of the Securities Act and any otherwise applicable

Blue Sky Laws.

  36. Further, the Debtors submit that the exemption provided by section 1145(a)(1) of

the Bankruptcy Code from the registration requirements of the Securities Act applies to the offer

and sale of the shares of New Common Stock to Holders of Senior Unsecured Notes Claims (the

"Section 1145 Securities") pursuant to the Plan.  Section 1145(a)(1) of the Bankruptcy Code

provides that the registration requirements of Section 5 of the Securities Act and any applicable

Blue Sky Laws will not apply to the offer or sale of stock, warrants or other securities by a

debtor under a plan of reorganization if (i) the offer or sale occurs under a plan of reorganization,

(ii) the recipients of securities hold a claim against, an interest in or claim for administrative

expense against the debtor and (iii) the securities are issued in exchange for a claim against or interest in a debtor or are reissued principally in such exchange and partly for cash and property.

37.     The Debtors are relying on the exemptions provided by section 4(a)(2) and Rule 506 of Regulation D of the Securities Act and Rule 701 under the Securities Act from the registration requirements of the Securities Act to exempt the offering, issuance and distribution of the shares of New Common Stock to officers and other key employees of the Debtors pursuant to the Management Incentive Plan (the "MIP Securities").  As stated above, Section 4(a)(2) of the Securities Act exempts transactions by an issuer not involving any public offering, and Regulation D provides a safe harbor under section 4(a)(2) for transactions that meet certain requirements, including that officers and other key employees of the Debtors qualify as "accredited investors" within the meaning of U.S. securities laws.  The Debtors believe that each of the officers and other key employees of the Debtors receiving the MIP Securities will be an accredited investor.

38.     Rule 701 under the Securities Act provides a safe harbor exemption from registration under the Securities Act for equity securities issued as employee compensation. Accordingly, the Debtors believe that MIP Securities issued to officers and other key employees of the Debtors will be exempt from registration under the Securities Act and Blue Sky Laws.

39.     In reliance upon the exemptions provided by sections 3(a)(9), 18(b)(4)(E) and 4(a)(2) of the Securities Act, Rule 506 of Regulation D, Rule 701 under the Securities Act and section 1145 of the Bankruptcy Code, as discussed in the preceding paragraphs, the Debtors believe that the anticipated offer, issuance and distribution of shares of the New Common Stock

under the Solicitation and the Plan will be exempt from registration under the Securities Act and

Blue Sky Laws.

40.     Hence, the Debtors respectfully submit that they have complied with applicable

nonbankruptcy law in accordance with the requirements of section 1126(b) of the Bankruptcy

Code.

### 3.     The Ballots Used to Solicit Holders of Claims Entitled to Vote on the Plan Complied with Bankruptcy Rules.

41.     Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which

substantially conforms to Official Form No. 314, only to "creditors and equity security holders

entitled to vote on the plan."  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or

rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the

creditor or equity holder or an authorized agent, and conform to the appropriate Official Form."

The forms of ballots used here complied with the Bankruptcy Rules and are consistent with

Official Form No. 314.  Further, no party has objected to the sufficiency of the ballots.  Based on

the foregoing, the Debtors submit that they satisfied the requirements of Bankruptcy Rules

3017(d) and 3018(c), and this Court has already approved, pursuant to the Scheduling Order, the

form of ballots that were used prepetition.

### 4.     The Voting Record Date Complied with Bankruptcy Rules.

42.     In a prepetition solicitation, the holders of record of the applicable claims against

and interests in a debtor entitled to receive ballots and related solicitation materials are to be

determined "on the date specified in the solicitation."  Fed. R. Bankr. 3018(b).  As clearly

specified in the Disclosure Statement and ballots, December 19, 2016 was the Voting Record

Date.  No party in interest objected to the Voting Record Date, which was approved by this Court in the Scheduling Order.

> **5.      The Debtors' Solicitation Period Complied with Bankruptcy Rule 3018(b).**

43.      The Debtors' solicitation period complied with Bankruptcy Rule 3018(b).  First, as set forth above, the Plan and Disclosure Statement were transmitted to all Holders of Senior Unsecured Notes Claims.  Second, the solicitation period, which lasted from December 23, 2016 through January 18, 2017 satisfied applicable non-bankruptcy law.[12]  As set forth above, the Holders of Senior Unsecured Notes Claims voted overwhelmingly to accept the Plan, and none of them objected to the length of the solicitation period.  Accordingly, the Debtors submit that they satisfied the requirements of Bankruptcy Rule 3018(b), as this Court also concluded in the Scheduling Order.[13]

> **6.      The Debtors' Vote Tabulation Was Appropriate.**

44.      As described in the Scheduling Motion, the Debtors used standard tabulation procedures in tabulating claim and interest holder votes.  Specifically, the Solicitation Agent reviewed all ballots received through January 18, 2017, in accordance with the procedures described in the Scheduling Motion and the Disclosure Statement.  The Debtors respectfully

---

[12]  Specifically, this period of time accords with the requirements under Rule 14e-1 of the Securities Exchange Act of 1934, as amended, which provides that a tender offer, similar to a consent solicitation, must generally be held open for at least 20 business days from the date the offer commences.

[13]  Similar relief has been granted in this district and others.  *See, e.g., In re Transcoastal Corp.*, No. 15-34956 (Bankr. N.D. Tex. Dec. 18, 2015) (approving solicitation procedures with voting period of two days); *In re Cross Canyon Energy Corp.*, No. 10-30747 (Bankr. S.D. Tex. Mar. 11, 2010) (approving solicitation procedures with voting period of one day where holders of claims and interests entitled to vote were familiar with the restructuring efforts and the plan); *In re Davis Petroleum Corp.*, No. 06-20152 (Bankr. S.D. Tex. Mar. 10, 2006) (approving solicitation procedures with voting period of five days).

submit that the results of the Debtors' tabulation of votes confirm that, with respect to Class 4

Senior Unsecured Notes Claims (the only voting class under the Plan), the requisite majorities in

amount and number of voting claims and interests voted to accept the Plan pursuant to section

1126(c) of the Bankruptcy Code.

> **7.** **Solicitation of the Plan Complied with the**
> **Bankruptcy Code and Was in Good Faith.**

45. Section 1125(e) of the Bankruptcy Code provides that "a person that solicits

acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions

of this title . . . is not liable" on account of such solicitation for violation of any applicable law,

rule, or regulation governing solicitation of acceptance or rejection of a plan.

46. As set forth the Scheduling Motion, the parties to the Restructuring Support

Agreement, and the Solicitation Agent, at all times engaged in arm's-length, good-faith

negotiations and took appropriate actions in connection with the solicitation of the Plan in

compliance with section 1125 of the Bankruptcy Code.  Therefore, the Debtors respectfully

request that the Court grant the parties the protections provided under section 1125(e) of the

Bankruptcy Code.

**II.** **The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code.**

> **A.** **The Plan Complies with the Applicable Provisions of the Bankruptcy Code (§**
> **1129(a)(1)).**

47. Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the

applicable provisions of [the Bankruptcy Code]."  The legislative history of section 1129(a)(1) of

the Bankruptcy Code explains that this provision also encompasses the requirements of sections

1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the

contents of a plan of reorganization, respectively.[14]  As explained below, the Plan complies with

the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as other applicable

provisions.

> **1. The Plan Satisfies the Classification**
> **Requirements of Section 1122 of the Bankruptcy Code.**

48.     The classification requirement of section 1122(a) of the Bankruptcy Code

provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may
> place a claim or an interest in a particular class only if such claim
> or interest is substantially similar to the other claims or interests of
> such class.

11 U.S.C. § 1122(a).

49.     For a classification structure to satisfy section 1122 of the Bankruptcy Code, not

all substantially similar claims or interests need to be grouped in the same class.[15]  Instead,

claims or interests designated to a particular class must be substantially similar to each other.[16]

50.     The Plan's classification of Claims and Equity Interests satisfies the requirements

of section 1122 of the Bankruptcy Code, because the Plan places Claims and Equity Interests

into eight separate Classes, with each Class differing from the Claims and Equity Interests in

---

[14]  31 S. Rep. No. 95-989, at 126, *reprinted in* 1978 U.S.C. C.A.N. 5787, 5912 (1978); H.R. Rep. No. 95-595, at
412, reprinted in 1978 U.S.C. C.A.N. 5963, 6368 (1977); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill.
1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly
broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123."); *In re Nutritional Sourcing
Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[15]  *See Armstrong World Indus., Inc.*, 348 B.R. at 159.

[16]  *See In re Vitro Asset Corp.*, 2013 WL 6044453, at * 5 (Bankr. N.D. Tex. Nov. 14, 2013) ("[A] plan may provide
for multiple classes of claims or interests so long as each claim or interest within a class is substantially similar to
other claims or interests in that class").

each other Class in a legal or factual nature or based on other relevant criteria.[17]  Specifically, the

Plan provides for the separate classification of Claims and Equity Interests into the following

Classes:

      a.      <u>Class 1</u>:  Other Priority Claims;

      b.      <u>Class 2</u>:  Other Secured Debt Claims;

      c.      <u>Class 3</u>:  Senior Secured Debt Claims;

      d.      <u>Class 4</u>:  Senior Unsecured Notes Claims;

      e.      <u>Class 5</u>:  General Unsecured Claims;

      f.      <u>Class 6</u>:  Intercompany Claims;

      g.      <u>Class 7</u>:  Equity Interests in Parent; and

      h.      <u>Class 8</u>:  Equity Interests in Subsidiaries.

      51.      Claims and Equity Interests assigned to each particular Class described above are

substantially similar to the other Claims and Equity Interests in such Class.  In addition, valid

business, legal, and factual reasons justify the separate classification of the particular Claims or

Equity Interests into the Classes created under the Plan, and no unfair discrimination exists

between or among holders of Claims and Equity Interests.  Namely, the Plan separately classifies

the Claims because each holder of such Claims or Equity Interests may hold (or may have held)

rights in the Estates legally dissimilar to the Claims or Equity Interests in other Classes.  For

example, Claims (rights to payment) are classified separately from Equity Interests (representing

ownership in the business).  Secured Claims are classified separately from unsecured Claims,

---

[17]  *See* Plan at Article III.

because the Debtors' obligations with respect to the former are secured by collateral. Accordingly, the Plan satisfies section 1122(a) of the Bankruptcy Code.

### 2. The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code.

52. Section 1123(a) of the Bankruptcy Code sets forth seven criteria that every chapter 11 plan filed by a corporate debtor must satisfy. The Plan satisfies each of these requirements.

### a. *Designation of Classes of Claims and Equity Interests (§ 1123(a)(1)).*

53. Article III of the Plan properly designates classes of Claims and Equity Interests and thus satisfies the requirement of section 1122 of the Bankruptcy Code, and no party has asserted otherwise.

### b. *Specification of Unimpaired Classes (§ 1123(a)(2)).*

54. Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan." The Plan meets this requirement by identifying each Class in Article III of the Plan that is Unimpaired.

### c. *Treatment of Impaired Classes (§ 1123(a)(3)).*

55. Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan." The Plan meets this requirement by setting forth the treatment of each Class in Article III of the Plan that is Impaired.

### d. *Equal Treatment within Classes (§ 1123(a)(4)).*

56. Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular

claim or interest agrees to a less favorable treatment of such particular claim or interest." The Plan meets this requirement because holders of Allowed Claims or Equity Interests will receive the same rights and treatment as other holders of Allowed Claims or Equity Interests within such holders' respective class.

e.    *Means for Implementation (§ 1123(a)(5)).*

57.    Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation. The Plan satisfies this requirement because Article V of the Plan, as well as other provisions thereof, provides for the means by which the Plan will be implemented. Among other things, Article V of the Plan:

    a.    provides for the cancellation of all existing Equity Interests in FES Ltd.;

    b.    authorizes the issuance of the New Common Stock in Reorganized Parent;

    c.    approves the Debtors' entry into the Restructuring Support Agreement and Backstop Agreement;

    d.    authorizes the Reorganized Debtors' consummation of the Exit Facility;

    e.    authorizes the issuance and adoption and implementation of the Management Incentive Plan and Management Employment Agreements;

    f.    authorizes the Debtors and/or Reorganized Debtors to take all actions necessary to effectuate the Plan, including those actions necessary to effect the Restructuring Transactions;

    g.    authorizes the adoption of and entry into the Plan Documents;

    h.    provides for the vesting of Estate assets in the Reorganized Debtors;

    i.    provides for the preservation and vesting of certain Causes of Action in the Reorganized Debtors; and

      j.      provides for the appointment of the members of the New Board and the officers, directors, and/or managers of each of the Reorganized Debtors.

      f.     *Issuance of Non-Voting Securities (§ 1123(a)(6)).*

58.     Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities.  By its own terms, section 1123(a)(6) applies only to corporations.  The Plan provides that the Amended Organizational Documents of Reorganized Parent will include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code.  The remaining Debtors are exempt from the requirements of section 1123(a)(6) of the Bankruptcy Code because they are not corporations.  As such, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code, and no party has asserted otherwise.

      g.     *Directors and Officers (§ 1123(a)(7)).*

59.     Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy."  Article V.K of the Plan outlines the manner of selecting the members of the New Board of Reorganized Parent, which accords with applicable state law, the Bankruptcy Code, and the interests of creditors and equity security holders, and public policy.  Additionally, the members of the New Board of Reorganized Parent and the officers of the Reorganized Debtors were disclosed in the Plan Supplement.  Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code, and no party has asserted otherwise.

### 3. The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.

60. Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan. Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11.[18]

61. The Plan is consistent with section 1123(b) of the Bankruptcy Code. Specifically, under Article III of the Plan, Classes 1, 2, 3, 5, 6 and 8 are Unimpaired because the Plan leaves unaltered the legal, equitable, and contractual rights of the holders of Claims and Equity Interests within such Classes.[19] Class 4 is Impaired because the Plan modifies the rights of the holders of Claims within such Class as contemplated in section 1123(b)(1) of the Bankruptcy Code.[20] Class 7 is also Impaired because this class will not receive any distribution on account of the Equity Interests in Parent in such class. In addition and under section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides for the assumption of all Executory Contracts and Unexpired Leases under section 365 of the Bankruptcy Code, other than those that have been identified for rejection. Finally, for the reasons set forth below, the Plan's release, exculpation,

---

[18] 11 U.S.C. § 1123(b)(1)–(3), (6).

[19] *See* Plan at Article III.

[20] *See id.*

and injunction provisions are consistent with section 1123(b) of the Bankruptcy Code.  No party

has asserted that the Plan does not comply with section 1123(b).

### 4.      The Plan Complies with Section 1123(d) of the Bankruptcy Code.

62.      Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan

to cure a default the amount necessary to cure the default shall be determined in accordance with

the underlying agreement and nonbankruptcy law."

63.      The Plan complies with section 1123(d) of the Bankruptcy Code.  The Plan

provides for the satisfaction of cures under each Executory Contract and Unexpired Lease to be

assumed under the Plan by payment of the cure, if any, on the Effective Date, or as soon as

reasonably practicable thereafter, subject to the limitations described in Article VI of the Plan.[21]

In accordance with Article VI of the Plan and section 365 of the Bankruptcy Code, the Debtors

will satisfy any Cures under each Executory Contract and Unexpired Lease to be assumed under

the Plan on the Effective Date or on such other terms as the parties to such Executory Contracts

or Unexpired Leases otherwise agree.  No party has asserted that the Plan does not comply with

section 1123(d).

### 5.      The Plan's Release, Exculpation, and Injunction Provisions Comply with the Bankruptcy Code.

64.      The Plan includes certain Debtor and third-party releases, an exculpation

provision, and an injunction provision.  These provisions comply with the Bankruptcy Code and

prevailing law because, among other things, they are the product of extensive good faith, arm's

---

[21]   *See* Plan at Article VI.E.

length negotiations, were a material inducement for parties to enter into the Restructuring

Support Agreement, and are overwhelmingly supported by the Debtors and their key

stakeholders (including nearly unanimous support from the Holders of Senior Unsecured Notes

Claims).  No party-in-interest entitled to vote on the Plan has objected to the Plan's release,

exculpation, and injunction provisions.

        a.     *The Debtor Release is Appropriate and Complies with the*
            *Bankruptcy Code.*

65.     Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan

may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or

to the estate."  Accordingly, pursuant to section 1123(b)(3)(A), the Debtors may release estate

causes of action as consideration for concessions made by their various stakeholders pursuant to

the Plan.[22]  In considering the appropriateness of such releases, courts in the Fifth Circuit

generally consider whether the release is (a) "fair and equitable" and (b) "in the best interests of

the estate."[23]  The "fair and equitable" prong is generally interpreted, consistent with that term's

usage in section 1129(b) of the Bankruptcy Code, to require compliance with the Bankruptcy

Code's absolute priority rule,[24] while courts generally determine whether a release is "in the best

interest of the estate" by reference to the following factors:

        a.     the probability of success of litigation;

---

[22]  *See, e.g., In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (plan release provision "constitutes an acceptable settlement under § 1123(b)(3) because the Debtors and the Estate are releasing claims that are property of the Estate in consideration for funding of the Plan"); *In re Heritage Org., LLC*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007); *In re Mirant Corp.*, 348 B.R. 725, 737-39 (Bankr. N.D. Tex. 2006); *In re General Homes Corp.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991).

[23]  *See Mirant*, 348 B.R. at 738; *see also Heritage*, 375 B.R. at 259.

[24]  *See Mirant*, 348 B.R. at 738.

b.      the complexity and likely duration of the litigation, any attendant expense, inconvenience, or delay, and possible problems collecting a judgment;

c.      the interest of creditors with proper deference to their reasonable views; and

d.      the extent to which the settlement is truly the product of arm's-length negotiations.[25]

Ultimately, courts afford the Debtors some discretion in determining for themselves the appropriateness of granting plan releases of estate causes of action.[26]

66.      Article XI.B of the Plan provides for releases by the Debtors and the Reorganized Debtors of any and all Causes of Action, including any derivative claims, the Debtors could assert against the Released Parties[27] (the "Debtor Release").

67.      The Debtor Release easily meets the controlling standard.  First, as described below, the Plan (including the Debtor Release) complies with the Bankruptcy Code's absolute priority rule.  Class 4 Senior Unsecured Notes Claims is the only voting class under the Plan and this Class voted overwhelmingly to approve the Plan.  The only impaired, non-voting class under the Plan is Class 7, which consists of the Equity Interests in FES Ltd.  With respect to Class 7, no class of equal priority is receiving more favorable treatment and no class that is junior to the rejecting class will receive or retain any property on account of the Claims or Equity Interests in such junior class.

---

[25]  *See id.* at 739-40 (*citing Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 355-56 (5th Cir. 1997) ).

[26]  *See General Homes*, 134 B.R. at 861 ("[t]he court concludes that such a release is within the discretion of the Debtor").

[27]  The "Released Parties," as defined in the Plan, means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Senior Secured Agent; (d) the Senior Secured Lenders; (e) the Senior Unsecured Notes Trustee; (f) the Supporting Noteholders; (g) the Backstop Lenders; (h) the Holders of the Senior Unsecured Note Claims who voted in favor of the Plan; (i) each lender under Exit Facility; (j) the Subscription Agent; and/or (k) the related persons of each of the foregoing.

68.     In addition to being fair and equitable, the Debtor Release is in the best interest of the Estates.  **First**, the Debtors are not aware of the existence of any claims being released. **Second**, the sole voting class (Class 4) voted in favor of the Plan, including the Debtor Release. And **third**, the Plan, including the Debtor Release, was vigorously negotiated prepetition by sophisticated entities that were represented by able advisors.  The result is a compromise that reflects a true arm's-length negotiation process.  Accordingly, the Debtor Release is fair, equitable, and in the best interest of the Estates, is justified under the controlling Fifth Circuit standard, and should be approved.

> b.     *The Third-Party Release is Appropriate and Complies with the Bankruptcy Code.*

69.     Article XII of the Plan contains a third-party release provision (the "Third-Party Release") that should be approved pursuant to Fifth Circuit law.  The Third-Party Release provides that each Released Party shall be released from claims and causes as set forth in the Plan.

70.     Although certain Fifth Circuit decisions cast doubt as to the availability of nonconsensual third-party releases,[28] these decisions do not prohibit consensual third-party releases.[29]  *In Republic Supply Co. v. Shoaf*, the Fifth Circuit held that the Bankruptcy Code does not preclude a third-party release provision where "it has been accepted and confirmed as an

---

[28]  *See Bank of New York Trust Co. v. Official Unsecured Creditors Comm. (In re Pacific Lumber)*, 584 F.3d 229, 253 (5th Cir. 2009) (emphasis added) (concerning a plan that would release owners and guarantors from liability related to proposing, implementing and administering the reorganization plan); *see also Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1061 (5th Cir. 2012) (analyzing *Pacific Lumber* in the context of non-consensual, non-debtor discharges under section 1507 of the Bankruptcy Code and noting prior Fifth Circuit precedent forecloses non-consensual non-debtor releases in permanent injunctions).

[29]  *See, e.g., In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 701-2 (Bankr. W.D. Tex. 2011) ("[T]he Fifth Circuit does allow permanent injunctions so long as *there is consent . . . .*") (emphasis in original).

integral part of a plan of reorganization."[30]  *The Republic Supply* court concluded that the third

party release provision at issue was binding and enforceable.[31]

71.     Under Fifth Circuit law, consensual, non-debtor releases that are, as here, (i)

specific in language, (ii) integral to the plan, (iii) a condition of the settlement, and (iv) given for

consideration, do not violate the Bankruptcy Code and should be allowed to be included in a

plan.[32]  The critical factor in determining whether a release is consensual is whether, after the

Debtors' due process obligations have been satisfied, including the provision of appropriate

notice, "the affected creditor timely objects to the provision."[33]  Other courts in this district and

other districts in Texas have followed this same approach.[34]

---

[30]  *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987).

[31]  *Id.* at 1053.

[32]  *See In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775-76 (Bankr. N.D. Tex. 2007) (citing *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987) ); *see also FOM Puerto Rico v. Dr. Barnes EyeCenter, Inc.*, No., 05-00333, 2006 WL 228982, at *4 (N.D. Tex. Jan. 31, 2006).

[33]  *See Wool Growers Cent. Storage Co.*, 371 B.R. at 776 (citing *In re Zale Corp.*, 62 F.3d at 760-61) (emphasis added).

[34]  *See In re Warren Resources, Inc.*, No. 16-32760 (Bankr. S.D. Tex. September 14, 2016), Confirmation Hr'g Tr. at 14 [Docket No. 345] ("If there are third-party releases that are negotiated between the Debtor and third parties as part of their deal, that doesn't seem to me to really run afoul of anything."); *In re Southcross Holdings, LP*, No. 16-20111 (Bankr. S.D. Tex. Apr. 11, 2016), Confirmation Hr'g Tr. at 42 [Docket No. 191] (debtors correctly characterized that release was consensual since the debtors provided extensive notice of the plan and confirmation hearing and no party specifically objected to the plan's release provisions*); In re Energy & Exploration Partners, Inc.*, No. 15-44931, Confirmation Hr'g Tr. at 44, 47 (Bankr. N.D. Tex. Apr. 21, 2016) [Docket No. 730] ("[I]f . . . notice has gone out, parties have actually gotten it, they've had the opportunity to look over it, the disclosure is adequate so that they can actually understand what they're being asked to do and the options that they're being given . . . I would say that this is one of those situations where [*Republic Supply*] says those people can waive substantive rights by not affirmatively participating in the case."); *see also In re RAAM Global Energy Co.*, No. 15-35615, Confirmation Hr'g Tr. at 61 (Bankr. S.D. Tex. Jan. 28, 2016) [Docket No. 399] ("[A]s to the holders of claims, it's limited to parties that have accepted and not opted out, and having reviewed it and in the absence of objections I think it is within the range of authority I have under existing Fifth Circuit law . . . .").

72.     Courts also have held that creditors who fail to return their ballot, or are not entitled to vote because they are unimpaired, have demonstrated their consent to the plan's third-party release provisions, and can thus be bound by such releases.[35]

73.     The Third-Party Release satisfies this standard.  ***First***, the Plan, including the Third-Party Release, was widely accepted by the sole voting Class under the Plan (Class 4 Senior Unsecured Notes Claims).  Of the remaining Classes, (i) Classes 1, 2, 3, 5, 6 and 8 are Unimpaired and deemed to consent to the Plan, and (ii) Class 7 is comprised of Holders of Equity Interests in FES Ltd. that are not subject to the Third-Party Release.

74.     Moreover, the Debtors provided extensive notice, including Publication Notice, of these chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan to all parties in interest.  Parties who were entitled to vote on the Plan and who voted to reject the Plan were afforded an "opt out" of the Third-Party Releases.  The release provisions in avoiding the "opt out" mechanism of the Plan were conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, and the Ballots.  And there was specific mention of such Third-Party Releases and the requirement to object to such releases in the notice of commencement sent by the Debtors to all parties in interest in these cases.

75.     ***Second***, the Third-Party Release is integral to the Plan and a condition of the global settlement embodied thereby – the provisions of which were vigorously negotiated

---

[35] In *In re Indianapolis Downs, LLC*, the court confirmed a plan whereby creditors who either: (i) voted to reject or accept the plan and failed to "opt-out"; (ii) failed to return their ballots; or (iii) whose claims were unimpaired, and therefore, were not entitled to vote consented to the plan's third-party release provision.  *In re Indianapolis Downs*, LLC, 486 B.R. 286, 305 (Bankr. D. Del. 2013); *see also In re Conseco Inc.*, 301 B.R. 525, 528 (Bankr. N.D. Ill. 2003) (finding a release provision binding unimpaired creditors who abstained from voting on the plan and did not otherwise opt out to be consensual).

prepetition with the goal of achieving a "fresh-start" for the Debtors and a clean break for the Debtors' stakeholders. That being said, the Debtors are not aware of the existence of any claims actually being released under the Third-Party Release.

76.     **Third**, the Third-Party release was given for consideration. All parties in interest benefit from the restructuring transactions contemplated by the Plan which will greatly improve the Debtors' liquidity profile and position them for future success. The alternative is the potential for a value-destructive, fire-sale liquidation.

77.     Accordingly, the Third-Party Release is justified under the principles set forth in *Republic Supply* and its progeny, is justified under the circumstances, and should be approved.

      c.     *The Exculpation Provision is Appropriate and Complies with the Bankruptcy Code.*

78.     Article XII.B of the Plan provides that each Exculpated Party[36] shall be released and exculpated from any Cause of Action arising out of acts or omissions in connection with these chapter 11 cases and certain related transactions, except for acts or omissions that are found to have been the product of actual fraud or gross negligence (the "Exculpation Provision").

79.     At the outset, it is important to underscore the difference between the Third-Party Release and the Exculpation Provision. Unlike the Third-Party Release, the Exculpation Provision does not affect the liability of third parties *per se*, but rather sets a standard of care of gross negligence or actual fraud in hypothetical future litigation against an Exculpated Party for

---

[36]  Collectively:  (a) the Debtors, (b) the Reorganized Debtors, (c) the Supporting Noteholders, (d) the Backstop Lenders, (e) the lenders under the Exit Facility and the respective Related Persons of each of the foregoing Entities.

acts arising out of the Debtors' restructuring.[37]  A bankruptcy court has the power to approve an

exculpation provision in a chapter 11 plan because a bankruptcy court cannot confirm a chapter

11 plan unless it finds that the plan has been proposed in good faith.[38]  As such, an exculpation

provision represents a legal conclusion that flows inevitably from several different findings a

bankruptcy court must reach in confirming a plan.[39]  Once the court makes its good faith finding,

it is appropriate to set the standard of care of the parties involved in the formulation of that

chapter 11 plan.[40]  Exculpation provisions, therefore, appropriately prevent future collateral

attacks.  Here, the Exculpation Provision is likewise appropriate and vital because it provides

protection to those parties who served to further the restructuring process.

80.     There can be no doubt that the Debtors themselves are entitled to the relief

embodied in the Exculpation Provision.  Granting such relief falls squarely within the "fresh

start" principles underlying the Bankruptcy Code.[41]  Moreover, the Backstop Lenders, the

Supporting Noteholders and the Exit Facility Lenders, have been essential to the formulation and

prosecution of a largely consensual plan of reorganization.  Absent their commitments, a

consensual and efficient resolution of these chapter 11 cases would not have been possible.

81.     The Exculpation Provision represents an integral piece of the overall settlement

embodied by the Plan and is narrowly tailored to exclude acts of fraud and gross negligence, and

---

[37]  *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code.").

[38]  *See* 11 U.S.C. § 1129(a)(3).

[39]  *See* 11 U.S.C. § 157(b)(2)(L).

[40]  *See PWS*, 228 F.3d at 246-247 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties . . . .").

[41]  *See Pacific Lumber*, 584 F.3d at 252.

relates only to acts or omissions in connection with, or arising out of the administration of the Debtors' chapter 11 cases and their restructuring.  Accordingly, the Exculpation Provision should be approved.[42]

   d. *The Injunction Provision is Appropriate and Complies with the Bankruptcy Code.*

82. The injunction provision set forth in Article XII.D of the Plan (the "<u>Injunction Provision</u>") merely implements the Plan's discharge, release, and exculpation provisions, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties on account of or in connection with or with respect to any such Claims or Equity Interests discharged, released, exculpated, or settled under the Plan.  The Injunction Provision is thus a key provision of the Plan because it enforces the discharge, release, and exculpation provisions that are centrally important to the Plan.  Further, the injunction provided for in the Plan is consensual to the extent that it is not the subject of a pending objection.  As such, the Court should approve the Injunction Provision.[43]

**B. The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).**

83. The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the plan proponent comply with the applicable provisions of the Bankruptcy Code.

---

[42] *Cf. Wool Growers*, 371 B.R. at 775 ("[t]he validity of a consensual release is primarily a question of contract law because such releases are no different from any other settlement or contract."); *Pilgrim's Pride*, 2010 WL 200000, at *5.

[43] *See, e.g., Camp Arrowhead*, 451 B.R. at 701-2 ("the Fifth Circuit does allow permanent injunctions *so long as there is consent* . . . [w]ithout an objection, this court was entitled to rely on . . . silence to infer consent at the confirmation hearing") (citing *Pacific Lumber*, 584 F.3d at 253; *Pilgrim's Pride*, 2010 WL 200000, at *5).

The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.[44]  As discussed below, the Debtors have complied with sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and solicitation of the Plan.

### 1. The Debtors Complied with Section 1125 of the Bankruptcy Code.

84.     As discussed in Part I of this memorandum, the Debtors complied with the notice and solicitation requirements of section 1125 of the Bankruptcy Code, and no party has asserted otherwise.

### 2. The Debtors Complied with Section 1126 of the Bankruptcy Code.

85.     Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan of reorganization.  Specifically, under section 1126 of the Bankruptcy Code, only holders of allowed claims and allowed interests in impaired classes of claims or interests that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject such plan.

86.     As set forth in Part I of this memorandum, in accordance with section 1125 of the Bankruptcy Code, the Debtors solicited acceptances or rejections of the Plan from the holders of Allowed Claims in Class 4 Senior Unsecured Notes Claims — the only class entitled to vote on

---

[44]  *See In re Lapworth*, No. 97-34529 (DWS), 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code").

the Plan.  The Debtors did not solicit votes from holders of Claims and Equity Interests in

Classes 1, 2, 3, 5, 6, 7 and 8, because holders of such Claims and Equity Interests are either

Unimpaired and deemed to accept the Plan under section 1126(f) or Impaired and conclusively

presumed to have rejected the Plan under section 1126(g).  Thus, pursuant to section 1126(a) of

the Bankruptcy Code, only holders of Claims in Class 4 were entitled to vote to accept or reject

the Plan.

87.     As described above, Class 4 voted to accept the Plan in sufficient number and in

sufficient amount to constitute an accepting class under the Bankruptcy Code.  Based upon the

foregoing, the Debtors submit that they satisfy the requirements of section 1129(a)(2) of the

Bankruptcy Code, and no party has asserted otherwise.

### C.      The Plan was Proposed in Good Faith (§ 1129(a)(3)).

88.     Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be

"proposed in good faith and not by any means forbidden by law."  Where a plan satisfies the

purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith

requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[45]  To determine whether a

plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the

circumstances surrounding the development of the plan.[46]

---

[45]  *See, e.g., PWS Holding Corp.*, 228 F.3d at 242 (*quoting In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997 (*quoting Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985)); *In re Century Glove*, Cir. A. Nos. 90-400 and 90-401, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) ; *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

[46]  *See, e.g., T-H New Orleans*, 116 F.3d at 802 (*quoting In re Sun Country Dev., Inc.*, 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012); *Century Glove*, 1993 WL 239489, at *4.

89.     The Plan satisfies section 1129(a)(3) of the Bankruptcy Code.  The fundamental

purpose of chapter 11 is to enable a distressed business to reorganize its affairs to prevent job

losses and the adverse economic effects associated with disposing of assets at liquidation value.[47]

Here, the Plan will enable the Debtors to right-size their balance sheet, preserve the value of the

Debtors as a going concern (which inures to the benefit of stakeholders enterprise-wide), and

position the Debtors for long-term success.  Moreover, the Plan is the product of extensive

arm's-length negotiations among the Debtors and the parties to the Restructuring Support

Agreement, and is supported by virtually all stakeholders.  The Plan's overwhelming support by

the Holders of Senior Unsecured Notes Claims is strong evidence that the Plan is likely to

succeed.  Finally, as set forth herein, the Plan complies with bankruptcy and applicable

nonbankruptcy law.  No party has asserted that the Plan does not comply with section 1129(a)(3)

of the Bankruptcy Code.

     **D.**     **The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)).**

90.     Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses

paid by the plan proponent, by the debtor, or by a person receiving distributions of property

under the plan, be subject to approval by the Court as reasonable.  Courts have construed this

---

[47]   *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984); *B.D. Int'l Disc. Corp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Disc. Corp.)*, 701 F.2d 1071, 1075 n.8 (2d Cir. 1983) (stating that "the two major purposes of bankruptcy [are] achieving equality among creditors and giving the debtor a fresh start").

section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the Court as to their reasonableness.[48]

91.     The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.  The Debtors submit that payment of Professional Fee Claims are the only category of payments that fall within the ambit of section 1129(a)(4) of the Bankruptcy Code in these chapter 11 cases, and the Debtors may not pay Professional Fee Claims absent Court approval.  Further, all such Professional Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 and/or 330 of the Bankruptcy Code.[49]  Article II.A of the Plan, moreover, provides that Professionals shall file all final requests for payment of Professional Fee Claims no later than sixty (60) days after the Effective Date, thereby providing an adequate period of time for interested parties to review such Professional Fee Claims.  No party has asserted that the Plan does not comply with section 1129(a)(4) of the Bankruptcy Code.

**E.     The Debtors Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (§ 1129(a)(5)).**

92.     Section 1129(a)(5)(A)(i) of the Bankruptcy Code requires that the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors.  Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the identity of an "insider" (as defined by section 101(31) of the Bankruptcy Code) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider.

---

[48]  *See Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998)  ("Section 1129(a)(4) by its terms requires court approval of any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case") (internal citations omitted); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[49]  *See* 11 U.S.C. §§ 328(a), 330(a)(1)(A).

Additionally, the Bankruptcy Code provides that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[50]  The "public policy requirement would enable [the court] to disapprove plans in which demonstrated incompetence or malevolence is a hallmark of the proposed management."[51]

93.     The Debtors have satisfied section 1129(a)(5) of the Bankruptcy Code.  In the Plan and the Plan Supplement, the Debtors identified the members of the New Board of FES Ltd. Board and the officers and directors of each of the Reorganized Debtors to serve as of the Effective Date.  The Debtors have also disclosed that the Reorganized Parent may appoint additional directors to the extent required in order to list the New Common Stock on certain equity exchanges. In the event that the Debtors appoint additional directors prior to the Effective Date, the Debtors will disclose the identity of such directors to the Bankruptcy Court.

94.     The Reorganized Debtors' appointment of officers and directors is "consistent with the interests of creditors and equity security holders and with public policy."[52]  The proposed officers and directors of the Reorganized Parent of the Reorganized Debtors have significant knowledge and business and industry experience, are competent, and will give the Reorganized Debtors both continuity and fresh insights into running their businesses.  The Debtors believe control of the Reorganized Debtors by the proposed individuals will be beneficial, and no party in interest has objected to the Plan on these grounds.  Therefore, the requirements under section 1129(a)(5)(A)(ii) of the Bankruptcy Code are satisfied.

---

[50]  *See* 11 U.S.C. § 1129(a)(5)(A)(ii).

[51]  *See* 7 Collier on Bankruptcy ¶ 1129.02[5][b] (16th ed. 2012).

[52]  11 U.S.C. § 1129(a)(5)(A)(ii).

95.     Finally, the Debtors satisfied section 1129(a)(5)(B) of the Bankruptcy Code because the Debtors publicly disclosed the identity of all insiders that the Reorganized Debtors will employ or retain and the nature of any compensation for such insiders in compliance with the Bankruptcy Code in the Plan Supplement.  No party has asserted that the Plan does not comply with section 1129(a)(5) of the Bankruptcy Code.

**F.     The Plan Does Not Require Governmental Regulatory Approval (§ 1129(a)(6)).**

96.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

**G.     The Plan is in the Best Interests of All the Debtors' Creditors (§ 1129(a)(7)).**

97.     Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," provides, in relevant part:

> With respect to each impaired class of claims or interests—
>
> (A)     each holder of a claim or interest of such class—
>
>> (i)     has accepted the plan; or
>> (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date . . . .

11 U.S.C. § 1129(a)(7).

98.     The best interests test applies to individual dissenting holders of impaired claims and interests rather than classes, and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[53]  As noted elsewhere, Classes 1, 2, 3, 5, 6 and 8 are Unimpaired, and thus none of the Holders of Claims or Equity Interests in those Classes can invoke section 1129(a)(7).  The only impaired class is Class 7, which is comprised of the Equity Interests in FES Ltd.

99.     As set forth in the Disclosure Statement[54] and as will be established at the Confirmation Hearing, the Debtors, with the assistance of their advisors, prepared a liquidation analysis that estimates recoveries for members of each class under the Plan.  The projected recoveries under the Plan are equal to or in excess of the recoveries estimated in a hypothetical chapter 7 liquidation.[55]  The liquidation analysis, prepared by the Debtors with the assistance of Alvarez & Marsal North America, LLC, estimates that creditors will realize approximately $92.7 million to $119.1 million in a chapter 7 liquidation, which translates into a recovery of 16% to 26% for Holders of Senior Unsecured Notes Claims and Holders of General Unsecured Claim.  By contrast, under the Plan, Holders of Senior Unsecured Notes Claims are currently projected, as addressed further below, to recover 52% to 62% in the value of New Common Stock and Holders of General Unsecured Claims will be paid in full.

---

[53]   *See Bank of Amer. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *Century Glove*, 1993 WL 239489, at *7; *In re Adelphia Commc'ns. Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[54]   *See* Disclosure Statement at Ex. D.

[55]   *Id.*

100.    Accordingly, under the foregoing analysis, the Plan complies with section

1129(a)(7), and no party has asserted otherwise.

**H.    The Plan is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code.**

101.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or

interests must either accept a plan or be unimpaired under a plan.

102.    Of the impaired Classes of Claims and Equity Interests under the Plan, Class 4

voted to accept the Plan.  Holders of Interests in Class 7 were deemed to have rejected the Plan

and thus were not entitled to vote.  While the Plan does not satisfy section 1129(a)(8) of the

Bankruptcy Code with respect to the Impaired Class that was deemed to reject, the Plan is

confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy

Code, as discussed below.

**I.    The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)).**

103.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be

paid in full on the effective date of a plan and that the holders of certain other priority claims

receive deferred cash payments.  In particular, pursuant to section 1129(a)(9)(A) of the

Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy

Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must

receive on the effective date cash equal to the allowed amount of such claims.  Section

1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in

section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally domestic support

obligations, wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).  Finally, section 1129(a)(9)(C) provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.

104.    The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.  First, Article II of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each holder of an Allowed Administrative Expense Claim will receive Cash equal to the amount of such Allowed Administrative Expense Claim on the Effective Date, or as soon as reasonably practicable thereafter, or at such other time defined in Article II.A of the Plan.  Second, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Plan.  Finally, Article II.B of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it specifically provides that each holder of Allowed Priority Tax Claims shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  Thus, the Debtors submit that the Plan satisfies each of the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

J.      **At Least One Class of Impaired, Non-Insider Claims Accepted the Plan (§ 1129(a)(10)).**

105.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.

106.    As set forth above, holders of Class 4 Senior Unsecured Notes Claims—which is impaired under the Plan—voted unanimously to accept the Plan The Plan thus satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

K.      **The Plan is Feasible (§ 1129(a)(11)).**

107.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that a plan is feasible as a condition precedent to confirmation.  To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[56]  Rather, a debtor must provide only a reasonable assurance of success.[57]  There is a relatively low threshold of proof necessary to

---

[56]  *See Fin. Sec. Assurance Inc. v. T–H New Orleans Ltd., P'ship* (*In re T–H New Orleans Ltd P'ship*), 116 F.3d 790, 801 (5th Cir. 1997)  ("the [bankruptcy] court need not require a guarantee of success . . . [o]nly a reasonable assurance of commercial viability is required.") (citations omitted); *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success.  Success need not be guaranteed."); *In re Lakeside Global II Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (noting that the feasibility standard "has been slightly broadened and contemplates whether the debtor can realistically carry out its plan.").

[57]  *See Kane*, 843 F.2d at 649; *Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012); *W.R. Grace & Co.*, 475 B.R. at 115; *see also Pizza of Hawaii, Inc. v. Shakey's, Inc.* (*In re Pizza of Hawaii, Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation"); *accord In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

satisfy the feasibility requirement.[58]  As demonstrated below, the Plan is feasible within the

meaning of section 1129(a)(11) of the Bankruptcy Code.

108.    As will be established at the Confirmation Hearing, the Plan is feasible.  First, as

set forth in the Disclosure Statement, the Debtors thoroughly analyzed their ability post-

confirmation to meet their obligations under the Plan and continue as a going concern without

the need for further financial restructuring.  The Debtors also will have access to the Exit Facility

of $50,000,000 under the Plan in order to allow the Debtors to maintain adequate liquidity while

allowing them to fund capital expenditures necessary to sustain growth.  Second, as set forth in

the Disclosure Statement, the Debtors prepared projections of their financial performance

through fiscal year 2021.  These financial projections demonstrate the Debtors' ability to meet

their obligations under the Plan.  And third, upon the Effective Date, the Debtors expect to have

sufficient funds to make all payments contemplated by the Plan, both from cash on hand, receipts

from operations, and the proceeds of the Exit Facility.  Thus, the Plan satisfies section

1129(a)(11) of the Bankruptcy Code, and no party has asserted otherwise.

**L.    All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)).**

109.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees

payable under section 1930 of title 28 [of the United States Code], as determined by the court at

the hearing on confirmation of the plan."  Section 507(a)(2) of the Bankruptcy Code provides

---

[58] *See, e.g.*, *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (internal citations omitted); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D. N.J. 1996); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *on reconsideration,* 464 B.R. 208 (Bankr. D. Del. 2011).

that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title

28" are afforded priority status.

110.    The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article

XV.B of the Plan provides that all such fees and charges, to the extent not previously paid, will

be paid for each quarter (including any fraction thereof) until these chapter 11 cases are

converted, dismissed, or closed, whichever occurs first, and no party has asserted otherwise.

**M.      All Retiree Benefits Will Continue Post-Confirmation (§ 1129(a)(13)).**

111.    Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits

continue post-confirmation at any levels established in accordance with section 1114 of the

Bankruptcy Code.  To the extent section 1129(a)(13) of the Bankruptcy Code is applicable to the

Debtors, the Reorganized Debtors will continue to pay, in accordance with applicable law, any

retiree benefits (as defined in section 1114 of the Bankruptcy Code) for the period during which

the Debtors have obligated themselves to provide such benefits.  Consequently, the requirements

of section 1129(a)(13) of the Bankruptcy Code are satisfied under the Plan.

**N.      Sections 1129(a)(14) through 1129(a)(16) Do Not Apply to the Plan.**

112.    Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic

support obligations.  Since the Debtors are not subject to any domestic support obligations, the

requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.  Likewise, section

1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual"

as defined in the Bankruptcy Code.  Because none of the Debtors is an "individual," the

requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.  Finally, each of the

Debtors are a moneyed, business, or commercial corporation, and therefore, section 1129(a)(16)

of the Bankruptcy Code, which provides that property transfers by a corporation or trust that is

not a moneyed, business, or commercial corporation or trust be made in accordance with any

applicable provisions of nonbankruptcy law, is not applicable to these chapter 11 cases.

      **O.**      **The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code.**

      113.      Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable

requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of

the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section

1129(b) of the Bankruptcy Code are satisfied.  To confirm a plan that has not been accepted by

all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the

plan proponent must show that the plan does not "discriminate unfairly" and is "fair and

equitable" with respect to the non-accepting impaired classes.[59]

      114.      A plan is "fair and equitable" with respect to an impaired class of claims or

interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority"

rule.[60]  This requires that an impaired rejecting class of claims or interests either be paid in full or

that a class junior to the impaired accepting class not receive any distribution under a plan on

---

[59]  *See John Hancock*, 987 F.2d at 157 n.5; *In re Ambanc La Mesa L.P.*, 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

[60]  *See Bank of Amer.*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

account of its junior claim or interest.[61]  The Debtors submit that the Plan satisfies the "fair and equitable" requirement notwithstanding that Class 7 Equity Interests in Subsidiaries are deemed to reject the Plan.  As to Class 7, there is no Class that is junior to such Class will receive or retain any property on account of the Claims or Equity Interests in such Class.

115.    Further, courts will deny confirmation if a plan undervalues a debtor and would result in senior creditors receiving more than full compensation on account of their allowed claims, at the expense of junior creditor or equity holders.[62]

116.    Here, Holders of Class 4 Senior Unsecured Notes Claims are not receiving a full recovery under the Plan – not even close.  The Disclosure Statement projected that Holders of Class 4 Claims will realize a recovery of 44% to 51% in the value of New Common Stock.  Such projection was based on an enterprise valuation of the Reorganized Debtors dated as of December 1, 2016 provided to the Debtors by Robert J. White of Jefferies LLC ("Jefferies"), the Debtors' investment banker, as reflected in Exhibit F to the Disclosure Statement.

117.    Since the commencement of the solicitation of the Plan on December 23, 2016, certain market values that underlie Mr. White's valuation have changed.  In order to take such changes into account, Mr. White prepared an updated valuation analysis dated as of March 2, 2017 that now projects that Holders of Class 4 Claims will realize a recovery of 52% to 62% in

---

[61]  *See id.*

[62]  *See In re Exide Technologies*, 303 B.R. 48, 66 (Bankr. D. Del. 2003) (Carey, J.) (finding that plan undervalued debtors and denying confirmation); *In re MCorp Fin., Inc.,* 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992) (Clark, J.) (denying confirmation under section 1129(b) where plan failed to establish upper limit to creditor distributions at the expense of rejecting stockholders); *In re Future Energy Corp.*, 83 B.R. 470, 495 n.39 (Bankr. S.D. Ohio 1988) ("Clearly, overpayment of senior creditors is violative of the fair and equitable standard."); *In re Walat Farms, Inc.*, 70 B.R. 330, 335 (Bankr. E.D. Mich. 1987) (noting that it "would do violence to the 'fair and equitable' standard by paying [the creditor] more than its claim").

the value of New Common Stock.  Based upon by his background and credentials, Mr. White is

qualified to render an expert opinion on the value of the Reorganized Debtors' enterprise value

and the value of the New Common Stock to be issued to Holders of Class 4 Claims under the

Plan.  The updated valuation analysis prepared by Mr. White is reasonable, persuasive, and based

upon standard and accepted valuation methodologies, and the Debtors have received no

objections to such valuation from any parties in interest.  Under Mr. White's updated valuation

analysis, Holders of Class 4 Senior Unsecured Notes Claims do not come close to realizing a full

recovery on account of their Allowed Claims against the Debtors.  Hence, it is entirely fair and

equitable and not unfairly discriminatory for Holders of Class 7 Equity Interests in Parent to

receive no recovery under the Plan.

**P.**      **The Debtors Complied with Section 1129(d) of the Bankruptcy Code.**

118.    The purpose of the Plan is not to avoid taxes or the application of section 5 of the

Securities Act of 1933.  Moreover, no governmental unit or any other party has requested that the

Court decline to confirm the Plan on such grounds.  Accordingly, the Plan satisfies the

requirements of section 1129(d) of the Bankruptcy Code, and no party has asserted otherwise.

**Q.**      **Modifications to the Plan.**

119.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may

modify its plan at any time before confirmation as long as such modified plan meets the

requirements of sections 1122 and 1123 of the Bankruptcy Code.  Further, when the proponent

of a plan files the plan with modifications with the court, the plan as modified becomes the plan.

Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed

accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.[63]

120.    The Debtors have filed certain technical modifications to the Plan (collectively, the "Modifications").  The Modifications comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Supporting Noteholders, as required and/or applicable under the terms of the Plan, support the Modifications.  Accordingly, the Debtors submit that no additional solicitation or disclosure is required on account of the Modifications, and that such Modifications should be deemed accepted by all creditors that previously accepted the Plan.

### R.    Good Cause Exists to Waive the Stay of the Confirmation Order.

121.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

122.    The Debtors submit that good cause exists for waiving and eliminating any stay of the Proposed Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the

---

[63] *See*, *e.g.*, *In re American Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988) (finding that nonmaterial modifications that do not adversely impact parties who have previously voted on the plan do not require additional disclosure or resolicitation); *In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850, 857 (Bankr. S.D. Tex. 2001) (same).  *See also In re Global Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation).

Proposed Confirmation Order will be effective immediately upon its entry.[64]  As addressed

above, these chapter 11 cases and the related transactions have been negotiated and implemented

in good faith and with a high degree of transparency and public dissemination of information.

123.    Under the circumstances, there is no reason for further delay if the Debtors

determine that declaring the effectiveness of the Plan should occur immediately.  The Debtors

believe that good cause exists to waive any stay imposed by the Bankruptcy Rules so that the

proposed Confirmation Order may be effective immediately upon its entry.

**III.    The Personal Injury/Property Damage Objections and McChristian Objection to the Plan Should Be Overruled to the Extent Such Objections Are Not Consensually Resolved Prior to the Confirmation Hearing**

124.    As noted above, the Debtors and the relevant parties are currently negotiating

language for insertion into the Proposed Confirmation Order that would resolve the one

remaining unresolved Personal Injury/Property Damage Objection.  The Debtors do not disagree

with the assertion by each of the Personal Injury/Property Damage Objections that the Plan

should not affect or otherwise attempt to treat the underlying claims that are the subject of these

objections and the Plan provides these claims are unimpaired.  The Debtors also agree that the

ultimate allowance, or disallowance, of the claims addressed by the Personal Injury/Property

Damage Objections will be resolved under applicable non-bankruptcy law by the courts in which

these claims are being adjudicated.   Because the claims that are the subject of the Personal

Injury/Property Damage Objections are unimpaired and will pass through the Plan, the Debtors

believe that there is no substantive basis to grant these objections.  However, the parties asserting

---

[64]  *See*, *e.g.*, *In re Idearc Inc.*, 423 B.R. 138, 158 (Bankr. N.D. Tex. 2009) (stay of confirmation order waived since debtors needed to consummate their chapter 11 plan prior to December 31, 2009); *In re Energy Partners Ltd.*, No. 09-32957, 2009 WL 2898876, at *19 (Bankr. S.D. Tex. Aug. 3, 2009) (waiving stay of confirmation order).

the Personal Injury/Property Damage Objections have requested additional clarifying language that the Plan and the Proposed Confirmation Order will not affect or impact the underlying claims that are covered by these objections.  Although the Debtors have mutually resolved substantially all of the Personal Injury/Property Damage Objections, the Debtors need to ensure that any language with respect to any unresolved Personal Injury/Property Damage Objections is neutral and does not dictate or otherwise adversely affect the Debtors' rights with respect to their ability to contest and dispute the various lawsuits to which these objections relate.

125.    The basis of the McChristian Objection is that (1) the Debtors are not parties to the McChristian Lease and, therefore, cannot reject such lease; (2) the Debtors are attempting to impair claims the McChristian Parties may have under the McChristian Lease; and (3) the Plan improperly releases non-debtor parties to the McChristian Lease from liability.  None of these assertions has any basis in law or in fact.  First, the Debtors filed their *Notice of (I) Rejection of Contracts and Lease; and (II) Deadline to Object Thereto* [Docket No. 114] (the "Rejection Notice") rejecting, *inter alia*, the McChristian Lease solely to the extent that the Debtors are determined to be parties to such lease.  If the McChristian Parties are correct in their assertion that the Debtors have no interest in the McChristian Lease, then the Rejection Notice will be of no force or effect with respect to the McChristian Lease.  If, however, the Debtors are at some point determined to have had a possessory interest in the property that is the subject of the McChristian Lease, the Rejection Notice and the Proposed Confirmation Order will have the effect of rejecting this lease, which is burdensome and provides no benefit to the Debtors.  To the extent the McChristian Parties have any claims against the Debtors arising from the rejection of

the McChristian Lease, the Plan provides that any such claims are unimpaired and not impacted

by the Plan or the Proposed Confirmation Order.  Finally, if the McChristian Parties have claims

against any non-debtor parties arising under the McChristian Lease, any such claims against

these parties are not affected or treated under the Plan.  Thus, none of the objections alleged in

the McChristian Objection have any merit.

126.    Notwithstanding the Plan's pass-through treatment of unimpaired Claims, the

Debtors have agreed to insert the following clarifying language to the Proposed Confirmation

Order that the Plan will not affect or otherwise modify any claims by and against the

McChristian Parties and the Debtors or any non-debtor parties:

> Unless otherwise noted in the Plan, capitalized terms used in this paragraph have the meanings used in the *Davis McChristian, Elmer McChristian, and Taylor Whitaker's Objection to Debtors' Pre-Packaged Joint Plan of Reorganization* [Docket No. 153-1]; *Davis McChristian, Elmer McChristian, and Taylor Whitaker's Objection to Debtors' Notice of (I) Rejection of Contracts And Leases, And (II) Deadline to Object Thereto* [Docket No. 154]; and *Davis McChristian, Elmer McChristian, and Taylor Whitaker's Objection to Debtors' Pre-Packaged Joint Plan of Reorganization* [Docket No. 155] (collectively, the "McChristian Objections").  Nothing in the Plan or the Confirmation Order shall operate to impair either the claims of the Lessors against any of the Debtors or any non-debtor party or the Debtors' or any non-debtor party's applicable defenses to such claims.  Any of Lessors' claims against any of the Debtors survive the bankruptcy case as if the case had not been commenced and be determined in accordance with applicable law.  Without limiting the foregoing, for the avoidance of doubt, the Lessors shall not be required to file any claims in the Debtors' bankruptcy cases in order to be paid on account of any claim, liability or cause of action.

The Debtors believe that this language adequately clarifies that any claims made by the McChristian Parties against the Debtors or any non-debtor parties are preserved and unaffected by the Plan.  The McChristian Objection should be overruled.

## **CONCLUSION**

For all of the reasons set forth herein, and as will be further shown at the Confirmation Hearing, the Debtors respectfully request that the Court approve the Disclosure Statement and confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Proposed Confirmation Order, and granting such other and further relief as is just and proper.

Dated:  March 22, 2017                    Respectfully submitted,


                                          */s/ Kenneth Green*
                                          _____
                                          SNOW SPENCE GREEN LLP
                                          Phil Snow (TX Bar No. 18812600)
                                          Kenneth Green (TX Bar No. 24036677)
                                          2929 Allen Parkway, Ste. 2800
                                          Houston, TX 77019
                                          Telephone:  713/335-4800
                                          Facsimile:  713/335-4902
                                          Email:      philsnow@snowspencelaw.com
                                                      kgreen@snowspencelaw.com

                                          and

                                          PACHULSKI STANG ZIEHL & JONES LLP
                                          Richard M. Pachulski (CA Bar No. 90073)
                                          Ira D. Kharasch (CA Bar No.109084)
                                          Maxim B. Litvak (TX Bar No. 24002482)
                                          Joshua M. Fried (CA Bar No.181541)
                                          10100 Santa Monica Blvd., 13th Floor
                                          Los Angeles, CA 90067
                                          Telephone: 310/277-6910
                                          Facsimile:  310/201-0760
                                          E-mail:      rpachulski@pszjlaw.com
                                                      ikharasch@pszjlaw.com
                                                      mlitvak@pszjlaw.com
                                                      jfried@pszjlaw.com

                                          *Counsel for the Debtors*

**EXHIBIT A**

**Proposed Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FORBES ENERGY SERVICES LTD., et al.,[1] | § | Case No. 17-20023 (DRJ) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | **Re:  Docket Nos. 8 & 9** |

---

### ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING, THE DEBTORS' PREPACKAGED JOINT PLAN OF REORGANIZATION

---

The above-captioned debtors (collectively, the "Debtors") having:

a.     distributed, on or about December 22, 2016, (i) the *Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 9] (as modified, amended, or supplemented from time to time, the "Plan"), (ii) *the Disclosure Statement for the Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 8] (the "Disclosure Statement"),[2] and (iii) ballots for voting on the Plan to Holders of Claims entitled to vote on the Plan, namely Holders of Class 4 Senior Unsecured Notes Claims, in accordance with the terms of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules");

b.     commenced, on January 22, 2017 (the "Petition Date"), these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

---

[1]   The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Forbes Energy Services Ltd. (1100); Forbes Energy Services LLC (6176); C.C. Forbes, LLC (5695); TX Energy Services, LLC (5843); and Forbes Energy International, LLC (6617).  The location of the Debtors' headquarters and service address is 3000 South Business Highway 281, Alice, TX 78332.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (as defined herein), as applicable.  The rules of interpretation set forth in Article I.A of the Plan apply.

c.        filed,[3] on January 22, 2017, the Plan and the Disclosure Statement;

d.        filed, on January 22, 2017, the *Emergency Motion of Debtors for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (III) Approving the Solicitation Procedures; (IV) Approving the Confirmation Hearing Notice; (V) Directing that a Meeting of Creditors Need Not Be Convened; and (VI) Granting Related Relief* [Docket No. 7] (the "Scheduling Motion");

e.        filed, on January 22, 2017, the *Declaration of James Lee of Kurtzman Carson Consultants, LLC Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 10], which detailed the results of the Plan voting process (the "Voting Declaration");

f.        filed, on January 22, 2017, the *Declaration of L. Melvin Cooper in Support of First Day Motions* [Docket No. 2] detailing the facts and circumstances of these chapter 11 cases and which included as exhibits the Restructuring Support Agreement and Backstop Agreement;

g.        filed, on January 27, 2017, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases; (II) Combined Hearing on the Disclosure Statement, Confirmation of the Prepackaged Joint Plan of Reorganization, and Related Matters; and (III) Objection Deadlines, and Summary of the Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 81] (the "Confirmation Hearing Notice"), which contained notice of the commencement of these chapter 11 cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing"), and the deadline for filing objections to the Plan and the Disclosure Statement;

h.        filed, on February 2, 2017, the certificates of service of the Confirmation Hearing Notice [Docket Nos. 101 and 102] (the "Initial Confirmation Hearing Notice Affidavit");

i.        published, on January 31, 2017, in the *Wall Street Journal (National Edition)*, the *Houston Chronicle*, and the *Corpus Christi Caller-Times* as evidenced by the *Affidavit of Publication* [Docket No. 117], the

---

[3]  Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these chapter 11 cases, as applicable.

Confirmation Hearing Notice, consistent with the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (III) Approving the Solicitation Procedures; (IV) Approving the Confirmation Hearing Notice; and (V) Directing that a Meeting of Creditors Not Be Convened; and (VI) Granting Related Relief* [Docket No. 61] (the "<u>Scheduling Order</u>");

j.      filed, on February 28, 2017, the *Notice of Change in Time and Place of Combined Disclosure Statement Approval and Plan Confirmation Hearing* [Docket No. 156] ("<u>Notice of Continuance of Confirmation Hearing</u>"), which continued the Confirmation Hearing to March 27, 2017 and, if necessary, to March 29, 2017;

k.      filed, on March 6, 2017, the certificates of service of the Notice of Continuance of Confirmation Hearing Notice [Docket Nos. 166 and 167] (the "<u>Continued Confirmation Hearing Notice Affidavit</u>");

l.      filed, on March 6, 2017, the *Updated Notice of Change in Time and Place of Combined Disclosure Statement Approval and Plan Confirmation Hearing* [Docket No. 168] ("<u>Updated Notice of Continuance of Confirmation Hearing</u>"), which set the Confirmation Hearing for March 29, 2017;

m.      filed, on March 7 and 13, 2017, respectively, the certificates of service of the Updated Notice of Continuance of Confirmation Hearing [Docket Nos. 171 and 177] (together with the Initial Confirmation Hearing Notice Affidavit, the Affidavit of Publication, and the Continued Confirmation Hearing Notice Affidavit, the "<u>Affidavits</u>");

n.      filed, on March 22, 2017, the *Plan Supplement for the Debtors' Prepackaged Joint Plan of Reorganization* (as modified, amended, or supplemented from time to time, the "<u>Plan Supplement</u>" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "<u>Plan</u>");

o.      filed, on March 22, 2017, the *Memorandum of Law of Forbes Energy Services, Ltd., et al., in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Prepackaged Joint Plan of Reorganization* (the "<u>Confirmation Brief</u>"), along with (i) the *Declaration of L. Melvin Cooper in Support of Approval of the Disclosure Statement and Confirmation of the Debtors' Prepackaged Joint Plan of Reorganization*; (ii) the *Declaration of Marc Liebman of Alvarez &*

*Marsal North America, LLC in Support of Approval of the Disclosure Statement and Confirmation of the Debtors' Prepackaged Joint Plan of Reorganization*; and (iii) the *Declaration of Robert J. White of Jefferies LLC in Support of Approval of the Disclosure Statement and Confirmation of the Debtors' Prepackaged Joint Plan of Reorganization* (together, the "Declarations");

p.     filed, on March 22, 2017, the *Debtors' Notice of Technical Modifications to Debtors' Prepackaged Joint Plan of Reorganization*; and

q.     operated their businesses and managed their properties during these chapter 11 cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.     entered, on January 25, 2017, the Scheduling Order;

b.     subsequently set March 29, 2017, at 10:00 a.m. (prevailing Central Time), as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.     reviewed the Plan, the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, the Scheduling Motion, the Plan Supplement, the Confirmation Brief, the Voting Declaration, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation, including all objections, statements, and reservations of rights;

d.     held the Confirmation Hearing;

e.     heard the statements and arguments made by counsel with respect to the approval of the remaining relief requested in the Scheduling Motion, including the approval of the Solicitation Procedures and the Confirmation Schedule;

f.     heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, and Confirmation; and

g.     considered all oral representations, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, and Confirmation.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement, Restructuring Support Agreement, Backstop Agreement, and Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Restructuring Support Agreement, the Backstop Agreement, Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, and Confirmation and other evidence presented at the Confirmation Hearing having established just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings and Conclusions.**

1.     The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052

and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

### B.   Jurisdiction, Venue, and Core Proceeding.

2.    The Court has jurisdiction over these chapter 11 cases pursuant to section 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement, Restructuring Support Agreement, Backstop Agreement, and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Approval of the Disclosure Statement, including associated solicitation procedures, the Restructuring Support Agreement, and the Backstop Agreement, and the Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code.

### C.   Eligibility for Relief.

3.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

### D.   Commencement and Joint Administration of these Chapter 11 Cases.

4.    On the Petition Date, each of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  In accordance with the *Order Directing Joint Administration of Chapter 11 Cases* [Docket No. 38], these chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and

6

managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

### E. Burden of Proof – Confirmation of the Plan.

5. The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

### F. Notice.

6. As evidenced by the Affidavits, due, adequate, and sufficient notice of the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, the Plan, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement, the Plan, the Restructuring Support Agreement, the Backstop Agreement, and all other materials distributed by the Debtors in connection with the Confirmation in compliance with the Bankruptcy Rules, has been provided to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel for the Senior Secured Agent; (c) counsel for the Supporting Noteholders; (d) counsel for the Senior Unsecured Notes Trustee; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the Environmental Protection Agency; (h) the office of the attorneys general for the states in which the Debtors operate; (i) the Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the

parties identified in clauses (a) through (i), collectively, the "Core Notice Parties"). In addition, the Debtors have provided actual notice of the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, and Plan, along with the applicable deadlines to object to the approval of the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, and confirmation of the Plan, to all Holders of Claims against, and Equity Interests in, the Debtors. Further, the Confirmation Hearing Notice was published in the *Wall Street Journal (National Edition)*, the *Houston Chronicle,* and the *Corpus Christi Caller-Times* on January 31, 2017 in compliance with the Scheduling Order and Bankruptcy Rule 2002(1). Such notice was adequate and sufficient under the facts and circumstances of these chapter 11 cases pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

> **G.      Disclosure Statement.**

7.      The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

> **H.      Ballots.**

8.      The only class of Claims entitled to vote to accept or reject the Plan is Class 4 Senior Unsecured Notes Claims (the "Voting Class").

9.      As approved by the Scheduling Order, the ballots that the Debtors used to solicit votes to accept or reject the Plan from Holders of Claims in the Voting Class adequately addressed the particular needs of these chapter 11 cases and were appropriate for Holders of Claims in the Voting Class to vote to accept or reject the Plan.

**I.      Solicitation.**

10.      As described in the Voting Declaration, the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Scheduling Motion (the "Solicitation Procedures"), was appropriate and satisfactory based upon the circumstances of these chapter 11 cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements and exemptions from the registration requirements under the Securities Act, and any exemptions from registration under "Blue Sky" requirements.

11.      Prior to the Petition Date, the Plan, the Disclosure Statement, the Restructuring Support Agreement, the Backstop Agreement, and the ballots (collectively, the "Solicitation Packages") and, following the Petition Date, the Confirmation Hearing Notice, were transmitted and served, including to all Holders of Claims in the Voting Class, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation

Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these chapter 11 cases.  No further notice is required.

12.     As set forth in the Voting Declaration, the Solicitation Packages were distributed to Holders of Claims in the Voting Class that held a Claim as of December 19, 2016 (the date specified in such documents for the purpose of the solicitation).  The establishment and notice of the Voting Record Date were reasonable and sufficient.

13.     The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Class to make an informed decision to accept or reject the Plan.

14.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Priority Claims); Class 2 (Other Secured Debt Claims); Class 3 (Senior Secured Debt Claims); Class 5 (General Unsecured Claims); Class 6 (Intercompany Claims); and Class 8 (Equity Interests in Subsidiaries) (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to have accepted the Plan.  Also, the Debtors were not required to solicit votes from the Holders of Equity Interests in Class 7 (Equity Interests in Parent), which were deemed to reject the Plan (the "Deemed Rejecting Class").

**J.      Voting.**

15.     As evidenced by the Voting Declaration and approved by the Scheduling Order, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.

### K.      Plan Supplement.

16.      On March 22, 2017, the Debtors filed the Plan Supplement with the Court. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.  The Core Notice Parties and Holders of Claims and Equity Interests were provided due, adequate, and sufficient notice of the Plan Supplement.  No other or further notice is or will be required with respect to the Plan Supplement.

### L.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).

17.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

#### (i)      Proper Classification—Sections 1122 and 1123.

18.      The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Equity Interests into 8 Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or

11

Equity Interests.  Each Class of Claims and Equity Interests contains only Claims or Equity

Interests that are substantially similar to the other Claims or Equity Interests within that Class.

### (ii)      Specified Unimpaired Classes—Section 1123(a)(2).

19.      The Plan satisfies the requirements of section 1123(a)(2) of the

Bankruptcy Code.  Article III of the Plan specifies that Claims and Equity Interests, as

applicable, in the following Classes (the "Unimpaired Classes") are Unimpaired under the Plan

within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
|-------|-------------|
| 1 | Other Priority Claims |
| 2 | Other Secured Debt Claims |
| 3 | Senior Secured Debt Claims |
| 5 | General Unsecured Claims |
| 6 | Intercompany Claims |
| 8 | Equity Interests in Subsidiaries |

20.      Additionally, Article II of the Plan specifies that Allowed Administrative

Expense Claims, Professional Fee Claims, and Priority Tax Claims will be paid in full in

accordance with the terms of the Plan, although these Claims are not classified under the Plan.

### (iii)      Specified Treatment of Impaired Classes—Section 1123(a)(3).

21.      The Plan satisfies the requirements of section 1123(a)(3) of the

Bankruptcy Code.  Article III of the Plan specifies that Claims and Equity Interests, as

applicable, in the following two Classes (the "Impaired Classes") are Impaired under the Plan

within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such

Classes:

| Class | Designation |
|-------|-------------|
| 4 | Senior Unsecured Notes Claims |
| 7 | Equity Interests in Parent |

**(iv)      No Discrimination—Section 1123(a)(4).**

22.      The Plan satisfies the requirements of section 1123(a)(4) of the

Bankruptcy Code.  The Plan provides for the same treatment by the Debtors for each Claim or

Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest

has agreed to a less favorable treatment of such Claim or Equity Interest.

**(v)      Adequate Means for Plan Implementation—Section 1123(a)(5).**

23.      The Plan satisfies the requirements of section 1123(a)(5) of the

Bankruptcy Code.  The provisions in Article V and elsewhere in the Plan, and in the exhibits and

attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper

means for the Plan's implementation, including regarding: (a) the issuance and distribution of the

New Common Stock (which the Reorganized Parent shall use its best efforts to have listed on a

nationally recognized exchange as soon as practicable following the Effective Date subject to

meeting applicable listing requirements); (b) the Reorganized Debtors' entry into the Exit

Facility; (c) the approval of the Backstop Agreement; (d) the approval of the Restructuring

Support Agreement; (e) implementation and approval of the Restructuring Transactions;

(f) authorization of the Debtors and/or Reorganized Debtors to take all actions necessary to

effectuate the Plan, including those actions necessary to effect the Restructuring Transactions;

(g) authorization of the adoption and implementation of the Management Incentive Plan and

Management Employment Agreements; (h) authorization of the adoption of and entry into the

13

Plan Documents; (i) authorization of the adoption of and entry into the Regions Letter of Credit Agreement; (j) cancellation of existing securities and agreements, and the surrender of existing securities (except as otherwise provided in the Plan); (k) cancellation of notes, instruments, certificates and other documents, including the Senior Unsecured Notes Indenture and the Senior Secured Loan Agreement, except as otherwise provided in the Plan; (k) settlement of Claims and Equity Interests; (1) vesting of Estate assets in the Reorganized Debtors; (m) the vesting of the Causes of Action in the Reorganized Debtors; and (n) the appointment of the directors of the New Board and the officers and directors of each of the Reorganized Debtors.

### (vi)     Voting Power of Equity Securities—Section 1123(a)(6).

24.     The Plan provides that the Amended Organizational Documents of Reorganized Parent will include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code.  The remaining Debtors are exempt from the requirements of section 1123(a)(6) of the Bankruptcy Code because they are not corporations.

### (vii)     Directors and Officers—Section 1123(a)(7).

25.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  In accordance with Article V.K of the Plan, the identities of the directors and officers of each of the Reorganized Debtors are identified in the Section V.K of the Plan and in Exhibit G of the Plan Supplement, which exhibit may be modified and/or supplemented prior to the Effective Date.  The selection of the officers and directors of the Reorganized Parent and

14

each of the Reorganized Debtors is consistent with the interests of Holders of Claims and Equity Interests, and public policy.

### (viii)   Impairment/Unimpairment of Classes—Section 1123(b)(1).

26.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Equity Interests.

### (ix)   Assumption and Rejection—Section 1123(b)(2).

27.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article VI of the Plan provides for the assumption of the Debtors' Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected during these chapter 11 cases under section 365 of the Bankruptcy Code, and the payment of cures, if any, related thereto.

### (x)   Compromise, Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).

28.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. As provided in Article V of the Plan, and in accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest.  The compromise and settlement of

such Claims and Equity Interests embodied in the Plan and reinstatement and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

29.     Articles X and XI of the Plan describe certain releases granted by the Debtors (the "Debtor Releases").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.  Also, the Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtors under the Plan; and (c) given, and made, after due notice and opportunity for hearing.  Creditors have voted in favor of the Plan, including the Debtor Releases.  The Plan, including the Debtor Releases, was negotiated by sophisticated parties represented by able counsel and financial advisors.  The Debtor Releases are therefore the result of an arm's-length negotiation process.

30.     Article XII of the Plan describes certain releases granted by Holders of Claims against the Debtors (the "Third-Party Release").  Notably, Holders of Equity Interests are not subject to the Third-Party Release.  With respect to the Holders of Claims who do not properly opt-out, the Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Debtors and the Reorganized Debtors.  The Confirmation Hearing Notice sent to Holders of Claims and Equity Interests and published in the *Wall Street Journal (National*

16

*Edition)*, the *Houston Chronicle*, and the *Corpus Christi Caller-Times* on January 31, 2017, and the ballots sent to all Holders of Claims entitled to vote on the Plan, in each case, unambiguously and prominently stated that the Plan contains the Third-Party Release.  Such release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and all Holders of Claims.  Also, the Third-Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by the Third-Party Release; (c) in the best interests of the Debtors and all Holders of Claims; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.

31.     The Third-Party Release is an integral part of the Plan.  Like the Debtor Releases, the Third-Party Release facilitated participation in both the Debtors' Plan and the chapter 11 process generally.  The Third-Party Release is instrumental to the Plan and was critical in incentivizing the parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.  The Third-Party Release was a core negotiation point in connection with the Restructuring Support Agreement and instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders and kept the Debtors intact as a going concern.  As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process by, among other things, supporting the Plan and the Restructuring Transactions. Furthermore, the Third-Party Release is consensual as all parties in interest, including all Releasing Parties, were provided notice of the chapter 11 proceedings, the Plan, and the deadline

17

to object to confirmation of the Plan and properly informed that all holders of Claims against the Debtors that did not file an objection with the Court in the chapter 11 cases that expressly objected to the inclusion of such holder as a Releasing Party under the provisions contained in Article XII of the Plan would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all claims and Causes of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type and/or capital letters in the Plan, the Disclosure Statement, the ballots, and the applicable notices.

      32.     The exculpation, described in Article XII.B of the Plan (the "Exculpation"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these chapter 11 cases in good faith and is appropriately released and exculpated from any obligation, Cause of Action, or liability for any prepetition or postpetition act taken or omitted to be taken in connection with, relating to, or arising out of the Debtors' restructuring efforts, the Restructuring Support Agreement and other Plan Documents, the Restructuring Transactions, these chapter 11 cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into, in connection with, or pursuant to the Restructuring Support Agreement, the Disclosure Statement or the Plan, the filing of these chapter 11 cases, the pursuit of Confirmation, the pursuit of Consummation, the administration

18

and implementation of the Plan, or the distribution of property under the Plan.  The Exculpation, including its carve-out for gross negligence or willful misconduct, is consistent with established practice in this jurisdiction and others.

33.     The injunction provision set forth in Article XII.D of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose.

34.     Article XII.C of the Plan appropriately provides that the Reorganized Debtors will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action except for Causes of Action that have been expressly waived, settled, or otherwise released as provided under the Plan, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.

35.     The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against property of the Estates described in Article V.I of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.

### (xi)    Additional Plan Provisions—Section 1123(b)(6).

36.    The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

## M.    Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).

37.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.    is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

## N.    Plan Proposed in Good Faith—Section 1129(a)(3).

38.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these chapter 11 cases, the Plan, the Restructuring Support Agreement, the process leading to Confirmation, including the support of Holders of Claims in the Voting

Class for the Plan, and the transactions to be implemented pursuant thereto. These chapter 11

cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors

to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a

capital and organizational structure that will allow them to conduct their businesses and satisfy

their obligations with sufficient liquidity and capital resources.

### O.    Payment for Services or Costs and Expenses—Section 1129(a)(4).

39.    The procedures set forth in the Plan for the Court's review and ultimate

determination of the fees and expenses to be paid by the Debtors in connection with these

chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, satisfy the

objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

### P.    Directors, Officers, and Insiders—Section 1129(a)(5).

40.    The Debtors have satisfied the requirements of section 1129(a)(5) of the

Bankruptcy Code. Article V.K of the Plan, in conjunction with Exhibit G of the Plan

Supplement, disclose the identity and affiliations of the individuals proposed to serve as the

initial directors and officers of the Reorganized Debtors, and the identity and nature of any

compensation for any insider who will be employed or retained by the Reorganized Debtors.

The proposed directors and officers for the Reorganized Debtors are qualified, and the

appointments to, or continuance in, such offices by the proposed directors and officers is

consistent with the interests of the Holders of Claims and Equity Interests and with public policy.

<br>

**Q.      No Rate Changes—Section 1129(a)(6).**

41.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these chapter 11 cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**R.      Best Interest of Creditors—Section 1129(a)(7).**

42.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

**S.      Acceptance by Certain Classes—Section 1129(a)(8).**

43.      Classes 1, 2, 3, 5, 6, and 8 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  The Voting Class has voted to accept the Plan.  Holders of Interests in Class 7 receive no recovery on account of their Equity Interests pursuant to the Plan, and are deemed to

have rejected the Plan.  The Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

> **T.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

44.      The treatment of Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

> **U.      Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

45.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  As evidenced by the Voting Declaration, the Voting Class, which is impaired, voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

> **V.      Feasibility—Section 1129(a)(11).**

46.      The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The financial projections attached to the Disclosure Statement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the

23

Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

> **W.      Payment of Fees—Section 1129(a)(12).**

47.      The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article XV.B of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

> **X.      Continuation of Employee Benefits—Section 1129(a)(13).**

48.      The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code by providing that any "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code, will be assumed.

> **Y.      Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

49.      Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these chapter 11 cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

> **Z.      "Cram Down" Requirements—Section 1129(b).**

50.      The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Notwithstanding the fact that the Deemed Rejecting Class has been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8)

have been met.  *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting

Class.  The Plan has been proposed in good faith, is reasonable and meets the requirements that

(a) no Holder of any Claim or Equity Interest that is junior to the Deemed Rejecting Class will

receive or retain any property under the Plan on account of such junior Claim or Equity Interest

and (b) no Holder of a Claim in a Class senior to the Deemed Rejecting Class is receiving more

than 100% on account of its Claim.  Accordingly, the Plan is fair and equitable to all Holders of

Equity Interests in the Deemed Rejecting Class.

      51.     Further, the Plan is fair and equitable and not unfairly discriminatory with respect

to the treatment of Class 7 Equity Interests in Parent, which Class receives no recovery under the

Plan and is deemed to reject the Plan.  The Court finds that Class 7 is not entitled to any recovery

under the Plan because Holders of Class 4 Senior Unsecured Notes Claims are not receiving a

full recovery under the Plan.  The Disclosure Statement projects that Holders of Class 4 Claims

will realize a recovery of 44% to 51% in the value of New Common Stock.  Such projection is

based on an enterprise valuation of the Reorganized Debtors dated as of December 1, 2016

provided by Robert J. White of Jefferies LLC, the Debtors' investment banker, as reflected in

Exhibit F to the Disclosure Statement.

      52.     Since the commencement of the solicitation of the Plan on December 23,

2016, certain market values that underlie Mr. White's original valuation have changed.  In order

to take such changes into account, Mr. White prepared an updated valuation analysis dated as of

March 2, 2017 that has been presented to the Court and that now projects that Holders of Class 4

Claims will realize a recovery of 52% to 62% in the value of New Common Stock.  The Court

finds that Mr. White is qualified to render an expert opinion on the value of the Reorganized

Debtors' enterprise value and the value of the New Common Stock to be issued to Holders of

Class 4 Claims under the Plan.  The Court finds that the updated valuation analysis prepared by

Mr. White is reasonable, persuasive, and based upon standard and accepted valuation

methodologies.  Having received no objections to such valuation from any parties in interest, the

Court agrees with the updated valuation of the New Common Stock prepared by Mr. White and

concludes that Holders of Class 4 Senior Unsecured Notes Claims will not realize a full recovery

on account of their Allowed Claims against the Debtors.  Hence, it is fair and equitable and not

unfairly discriminatory for Holders of Class 7 Equity Interests in Parent to receive no recovery

under the Plan.  Moreover, no Holder of Class 7 Equity Interests in Parent has objected to the

Plan or Confirmation.

### AA.    Only One Plan—Section 1129(c).

53.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy

Code.  The Plan is the only chapter 11 plan filed in each of these chapter 11 cases.

### BB.    Principal Purpose of the Plan—Section 1129(d).

54.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy

Code.  As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes

or the avoidance of the application of section 5 of the Securities Act.

### CC.    Not Small Business Cases—Section 1129(e).

55.    Section 1129(e) of the Bankruptcy Code does not apply to these chapter

11 cases as these are not small business cases.

26

**DD.    Good Faith Solicitation—Section 1125(e).**

56.    The Debtors, the Reorganized Debtors, the Supporting Noteholders, the Backstop Lenders, the Exit Facility lenders, Regions, the Senior Secured Agent, the Senior Secured Lenders, and the respective Related Persons of each of the foregoing Entities have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the execution, delivery, and performance of the Restructuring Support Agreement, the Subscription Agreement, the Exit Facility, the Regions Letter of Credit Agreement, and the Backstop Agreement, and solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**EE.    Satisfaction of Confirmation Requirements.**

57.    Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**FF.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

58.    Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived.

**GG.    Implementation.**

59.    All Plan Documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interest of the Debtors and their estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**HH.    Disclosure of Facts.**

60.    The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Plan Documents, and the fact that each applicable Debtor will emerge from its chapter 11 case as a validly existing corporation, limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations.

**II.    Good Faith.**

61.    The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the Exit Facility, the Regions Letter of Credit Agreement, the Subscription Agreement, the Backstop Agreement, the other Plan Documents, and the Restructuring Transactions.

**JJ.      Essential Element of the Plan.**

62.      Each of the Exit Facility, the Regions Letter of Credit Agreement, the Restructuring Support Agreement, and the Backstop Agreement is an essential element of the Plan, and entry into each of the Exit Facility, the Regions Letter of Credit Agreement, the Restructuring Support Agreement, and the Backstop Agreement is in the best interests of the Debtors, their Estates, and their creditors.  The Debtors have exercised sound business judgment in deciding to enter into the Exit Facility, the Regions Letter of Credit Agreement, the Restructuring Support Agreement, and the Backstop Agreement and have provided adequate notice thereof.  The Exit Facility, the Regions Letter of Credit Agreement, the Restructuring Support Agreement, and the Backstop Agreement have been negotiated in good faith and at arm's length among the Debtors and the parties thereto, and any credit extended and loans made to the Reorganized Debtors pursuant to the Exit Facility and the Regions Letter of Credit Agreement, and any fees paid thereunder, are deemed to have been extended, issued, and made in good faith.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.      **Findings of Fact and Conclusions of Law**.  The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by

the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

2.     **Disclosure Statement / Plan Documents.**  The Disclosure Statement and the Plan Documents, including without limitation, the Restructuring Support Agreement, the Backstop Agreement, the Exit Facility Documents, the Regions Letter of Credit Agreement, the Amended Organizational Documents, and the Registration Rights Agreement, (i) contain adequate information of a kind generally consistent with the disclosure requirements of applicable non- bankruptcy law, including the Securities Act; (ii) contain "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein; and (iii) are approved in all respects and the Debtors are authorized to consummate each of the Plan Documents to the fullest extent set forth therein.

3.     **Confirmation of the Plan.**  The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

4.      **Objections.**  Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is hereby incorporated by reference.  All objections and all reservations of rights pertaining to Confirmation or approval of the Disclosure Statement that have not been withdrawn, waived, or settled are overruled on the merits.

5.      **Plan Modifications.**  Subsequent to filing the Plan on January 22, 2017, the Debtors made certain technical modifications to the Plan (the "Plan Modifications").  The Plan Modifications do not materially adversely affect or change the treatment of any Claim or Equity Interest under the Plan.  After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code.  The filing with the Court on March 22, 2017, of the Plan Modifications and the disclosure of the Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

6.      **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan

31

(or who are conclusively presumed to accept the Plan) are deemed to have accepted the Plan as modified by the Plan Modifications.  No holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

7.  **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, the Exit Facility Documents, the Regions Letter of Credit Agreement, the Restructuring Support Agreement, the Backstop Agreement, the Registration Rights Agreement, the Amended Organizational Documents, and this Confirmation Order are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Equity Interests (regardless of whether such Holders of Claims or Equity Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

8.  **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan, this Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan (including the Exit Facility, the Regions Letter of Credit Agreement, and the Plan Documents), on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each

Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

9.      **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with the Exit Facility, the Regions Letter of Credit Agreement, the Restructuring Support Agreement, the Backstop Agreement, and the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective directors, officers or equity security holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such directors and officers.

10.     **Restructuring Transactions.**  The Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the Exit Facility, the Regions Letter of Credit Agreement, and the Plan Documents, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, as and to the extent provided in the Plan.  Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance. Except as otherwise provided in the Plan, each Reorganized Debtor, as applicable, shall continue

DOCS_SF:92918.10 28707/001

to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

11.     **Regions Letter of Credit Agreement.**  On the Effective Date, the Reorganized Debtors shall enter into the Regions Letter of Credit Agreement, on the terms set forth therein.  Upon entry of this Confirmation Order, the Regions Letter of Credit Agreement (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors in connection therewith) shall be deemed approved, to the extent not approved by the Court previously, and the Reorganized Debtors are authorized to execute and deliver the Regions Letter of Credit Agreement and any documents ancillary thereto, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as are acceptable to Regions.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Regions Letter of Credit Agreement: (a) shall be deemed to be granted; (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Regions Letter of Credit Agreement; (c) shall be deemed perfected on the Effective Date; and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-

34

bankruptcy law.  The Reorganized Debtors and the persons and entities granted such Liens and

security interests are authorized to make all filings and recordings, and to obtain all

governmental approvals and consents necessary to establish and perfect such Liens and security

interests under the provisions of the applicable state, federal, or other law that would be

applicable in the absence of the Plan and the Confirmation Order (it being understood that

perfection shall occur automatically by virtue of the entry of this Confirmation Order and any

such filings, recordings, approvals, and consents shall not be required), and will thereafter

cooperate to make all other filings and recordings that otherwise would be necessary under

applicable law to give notice of such Liens and security interests to third parties.

        12.    **Preservation of Causes of Action.**  Unless any Causes of Action against

an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the

Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the

Reorganized Debtors retain and may enforce all rights to commence and pursue, as appropriate,

any and all Causes of Action, whether arising before or after the Petition Date, as set forth in the

Plan.  The Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action

shall be preserved notwithstanding the occurrence of the Effective Date.  The Debtors or

Reorganized Debtors, as applicable, have advised the Court that they expressly reserve all rights

to prosecute any and all Causes of Action against any Entity, except as otherwise expressly

provided in the Plan or this Confirmation Order.

        13.    **Exit Facility.**  On the Effective Date, the Reorganized Debtors shall enter

into the Exit Facility, on the terms set forth in the Exit Facility Documents.  Upon entry of this

35

Confirmation Order, the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or the Reorganized Debtors in connection therewith) shall be deemed approved, to the extent not approved by the Court previously, and the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including the Exit Facility Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications acceptable to the Exit Facility lenders.

14.     On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents; and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the persons and entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation

36

Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

15. **Approval of the Restructuring Support Agreement**.  The Restructuring Support Agreement and the terms and provisions included therein are approved in their entirety. The Debtors are authorized to assume and implement the Restructuring Support Agreement and any and all instruments, documents, and papers contemplated thereunder, to fully perform any and all obligations thereunder, and to take any and all actions necessary and proper to implement the terms of the Restructuring Support Agreement.

16. The fees, indemnities, and expenses provided for or permitted by the Restructuring Support Agreement (including the Transaction Expenses (as defined in the Restructuring Support Agreement) and the Debtors' obligations to indemnify the Supporting Noteholders for the matters set forth in the Restructuring Support Agreement (the "Restructuring Indemnification Obligations")) are hereby approved as reasonable and shall constitute allowed administrative expense claims pursuant to section 503(b) of the Bankruptcy Code, as applicable, and senior in right of payment to all other claims (of any nature) against the Debtors, now existing or hereafter arising, shall be non-refundable and shall not be subject to any avoidance, disgorgement, reduction, setoff, recoupment, offset, recharacterization, subordination (whether contractual, equitable, or otherwise), counterclaims, cross-claims, defenses, disallowance,

37

impairment or any other challenges under any theory at law or in equity by any person or entity. The Debtors and the Reorganized Debtors, as applicable, are authorized to pay the fees, indemnities and expenses provided for or permitted by the Restructuring Support Agreement (including the Transaction Expenses and the Restructuring Indemnification Obligations), each in accordance with its terms and as and when required by the Restructuring Support Agreement, without further application to or order of the Court.

17.     **Approval of the Backstop Agreement**.  The Backstop Agreement and the terms and provisions included therein are approved in their entirety.  The Debtors are authorized to assume and implement the Backstop Agreement and any and all instruments, documents, and papers contemplated thereunder, to fully perform any and all obligations thereunder, and to take any and all actions necessary and proper to implement the terms of the Backstop Agreement.

18.     The fees, indemnities, and expenses provided for or permitted by the Backstop Agreement (including the Backstop Put Premium (as defined in the Backstop Agreement), the Transaction Expenses (as defined in the Backstop Agreement), and the Debtors' obligations to indemnify the Backstop Lenders for the matters set forth in the Backstop Agreement (the "Backstop Indemnification Obligations")) are hereby approved as reasonable and shall constitute allowed administrative expense claims pursuant to section 503(b) of the Bankruptcy Code, as applicable, and senior in right of payment to all other claims (of any nature) against the Debtors, now existing or hereafter arising, shall be non-refundable and shall not be subject to any avoidance, disgorgement, reduction, setoff, recoupment, offset, recharacterization,

subordination (whether contractual, equitable, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges under any theory at law or in equity by any person or entity. The Debtors and the Reorganized Debtors, as applicable, are authorized to pay the fees, indemnities and expenses provided for or permitted by the Backstop Agreement (including the Backstop Put Premium, the Transaction Expenses, and the Backstop Indemnification Obligations), each in accordance with its terms and as and when required by the Backstop Agreement, without further application to or order of the Court. The Backstop Put Premium and the Funding Fee (as defined in the Backstop Agreement) are not original issue discount in relation to the Exit Facility.

19.     **Directors and Officers of Reorganized Debtors.** As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire, and the New Board and the officers and directors of each of the Reorganized Debtors shall be appointed in accordance with the Plan, the Amended Organizational Documents, and other constituent documents of each Reorganized Debtor. The appointment of Persons selected to the New Board may be amended or supplemented prior to the Effective Date, subject to the disclosure of the identity of such Persons.

20.     Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors have, to the extent known and reasonably practicable, disclosed in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the New Board, as well as those Persons that will serve as an officer of the Reorganized Debtors. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to

be paid to such director or officer has also been disclosed to the extent reasonably practicable. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the Amended Organizational Documents and other constituent documents of the Reorganized Debtors.

21.     **Management Incentive Plan**.  On the Effective Date, the Debtors shall adopt the Management Incentive Plan.  The Management Incentive Plan, as more fully described in the Plan and Disclosure Statement, shall provide for the issuance of shares of New Common Stock to the officers and other key employees of Reorganized Parent in an amount equal to 12.2% (increasing ratably after the first eighteen (18) months following the Effective Date up to 12.5% over the period that the Exit Facility is still outstanding) of the Aggregate Equity.

22.     **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

23.     **Assumption or Rejection of Contracts and Leases.**  On the Effective Date, each Executory Contract and Unexpired Lease assumed under the Plan shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code and the payment of Cures, if any, shall be paid in accordance with Article VI.E of the Plan.  Each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or

other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the chapter 11 cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to Article VI.E of the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

24.     The following Executory Contracts and Unexpired Leases shall not be assumed:  Executory Contracts and Unexpired Leases that (1) have been previously expired or terminated pursuant to their own terms or by the agreement of the parties thereto; (2) have been rejected by order of the Bankruptcy Court; (3) are subject to a notice or motion to reject filed prior to the Effective Date; (4) are identified as rejected in the Plan Supplement; or (5) are otherwise rejected pursuant to the terms of the Plan.  To the extent that any party asserts any damages resulting from the rejection of any Executory Contract or Unexpired Leases, such claim must be filed within **thirty (30) days** of the effective date of such rejection, or such claim will be forever barred and disallowed against the applicable Reorganized Debtor.  For avoidance of

41

doubt, the deadline for parties to file rejection damage claims with respect to any Executory Contracts or Unexpired Leases rejected pursuant to (4) and (5) of this paragraph shall be **thirty (30) days** from the date of this Confirmation Order.

25.     **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX.A of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived.

26.     **Professional Compensation**.  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than **sixty (60) days** after the Effective Date.  The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amounts the Court Allows.  The Debtors are authorized to pay the Pre-Effective Date fees and expenses of all ordinary course professionals in the ordinary course of business without the need for further Court order or approval.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 (if applicable) of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional or Entity employed in the

ordinary course of the Debtors' business without any further notice to or action, order, or approval of the Court.

27.     **Release, Exculpation, Discharge, and Injunction Provisions.  The following release, exculpation, discharge, and injunction provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein.**

a.     **Discharge of Claims and Termination of Interests.**

28.     **To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order (including, without limitation, claims against and liabilities of the Debtors relating to outstanding letters of credit and Bank Product Obligations issued under or in connection with the Senior Secured Loan Agreement or the Regions Letter of Credit Agreement and the liens securing such obligations), all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy**

43

Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

        **b.**        **Releases by the Debtors.**

        29.        **Effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby acknowledged and confirmed, the Debtors and Reorganized Debtors, in their individual capacities and as debtors-in-possession (collectively, the "<u>Releasing Parties</u>") will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to the Debtors, the Reorganized Debtors, the Senior Secured Agent, the Senior Secured Lenders, the Senior Unsecured Notes Trustee, the Supporting Noteholders, the Backstop Lenders, the Holders of the Senior Unsecured Notes Claims who vote in favor of the Plan, each Lender under the Exit Facility, and the Subscription Agent (collectively, and together with the Related Persons of each of the foregoing, the "<u>Released Parties</u>") (and each such released party so released shall be deemed forever released, waived and discharged by the Releasing Parties) and their respective properties from any and all Claims, Causes of Action, litigation claims and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or**

44

omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtors, the chapter 11 cases, the Disclosure Statement, the Plan or the solicitation of votes on the Plan that such releasing party would have been legally entitled to assert (whether individually or collectively) or that any holder of a Claim or equity interest or other entity would have been legally entitled to assert for or on behalf of the Debtors, their Estates or the Reorganized Debtors (whether directly or derivatively) against any of the Released Parties; *provided, however*, that the foregoing provisions of this release shall not operate to waive or release (i) any Causes of Action expressly set forth in and preserved by the Plan or the Plan Supplement; (ii) any Causes of Action arising from fraud, gross negligence, or willful misconduct as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (iii) the rights of such releasing party to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to final order of the Bankruptcy Court.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any person and the Confirmation Order will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released pursuant to this release.

Notwithstanding the foregoing, the Debtors are not releasing the Debtors (but they are

releasing the Related Persons to the Debtors pursuant to this paragraph).

        c.        **Releases by Holders of Claims – Third-Party Releases.**

      30.      **As of and subject to the occurrence of the Effective Date, except for**

**the rights that remain in effect from and after the Effective Date to enforce the Plan and**

**the Plan Documents (including, without limitation, claims against and liabilities of the**

**debtors relating to outstanding letters of credit and Bank Product Obligations issued under**

**or in connection with the senior Secured Loan Agreement or the Regions Letter of Credit**

**Agreement and the liens securing such obligations), for good and valuable consideration,**

**the adequacy of which is hereby confirmed, including, without limitation, the service of the**

**Released Parties to facilitate the reorganization of the Debtors and the implementation of**

**the Restructuring and the Restructuring Transactions, and except as otherwise provided in**

**the Plan or in the Confirmation Order, the Released Parties are deemed forever released**

**and discharged by the (i) the Holders of all Claims who vote to accept the Plan, (ii) Holders**

**of Claims that are unimpaired under the Plan, (iii) Holders of Claims whose vote to accept**

**or reject the Plan is solicited but who do not vote either to accept or to reject the Plan, (iv)**

**Holders of Claims who vote to reject the Plan but do not opt out of granting the releases set**

**forth herein, (v) the Senior Unsecured Notes Trustee, (vi) the Senior Secured Agent, and**

**(vii) the Senior Secured Lenders from any and all Claims, interests, obligations, suits,**

**judgments, damages, demands, debts, rights, causes of action, losses, remedies, and**

**liabilities whatsoever, including any derivative claims, whether known or unknown,**

foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Holders or, except in the case of the Senior Secured Agent or the Holders of the Senior Secured Debt Claims, their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the chapter 11 cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the Restructuring of any Claim or Equity Interest before or during the chapter 11 cases, the Restructuring Transactions, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement, the Plan, the Exit Facility Documents and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to the Plan, the Backstop Agreement, or the Subscription Option, or any other act or omission, other than Claims or Causes of Action arising out of or related to any act or omission of a released party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.

d.      Exculpation.

31.      **The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and**

47

prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or Consummation of the Plan; *provided, however*, that the foregoing provisions will have no effect on (a) any Allowed Class 3 Claim relating to letters of credit or Bank Product Obligations continuing in force after the Effective Date or any liabilities at any time outstanding under the Regions Letter of Credit Agreement, or (b) the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; *provided, further*, that each Exculpated Party will be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; provided, further, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

   e.  **Injunction.**

   32.  **Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any**

**manner, any suit, action or other proceeding, or creating, perfecting or enforcing any lien of any kind, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, exculpated or to be exculpated, or discharged or to be discharged pursuant to the Plan or the Confirmation Order.  By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or equity interest will be deemed to have specifically consented to this injunction.  All injunctions or stays provided for in the chapter 11 cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

33.   **Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for any or all of the Exit Facility; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any

49

document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real

estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee,

regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest

extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of the

Confirmation Order, the appropriate state or local governmental officials or agents shall forego

the collection of any such tax or governmental assessment and accept for filing and recordation

of any of the foregoing instruments or other documents without the payment of any such tax,

recordation fee, or governmental assessment.

34.     **Cancellation of Existing Securities and Agreements**.  Except as

otherwise provided in the Plan or any agreement, instrument, or other document incorporated in

the Plan or the Plan Supplement, on the Effective Date: (a) all notes, instruments, certificates,

and other documents evidencing Claims or Equity Interests, including credit agreements and

indentures, shall be cancelled and the obligations of the Debtors and any non-Debtor affiliate

thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged,

and of no force or effect; and (b) the obligations of the Debtors pursuant, relating, or pertaining

to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of

incorporation or similar documents governing the shares, certificates, notes, bonds, purchase

rights, options, warrants, or other instruments or documents evidencing or creating any

indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other

instruments evidencing indebtedness or obligations of the Debtors that are specifically

Reinstated pursuant to the Plan) shall be deemed satisfied in full, released, and discharged.

35. **Documents, Mortgages, and Instruments.** Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

36. **Continued Effect of Stays and Injunction.** Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court that is in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

37. **Nonseverability of Plan Provisions Upon Confirmation.** Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent and a Court order (and subject to such other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

38. **Post-Confirmation Modifications.** Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein) and the Restructuring Support Agreement. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors expressly reserve

51

their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XV.D of the Plan.

39.  **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

40.  **Governmental Approvals Not Required.**  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

41.  **Exemption from Registration Requirements.**  Pursuant to sections 3(a)(9), 18(b)(4)(E) and 4(a)(2) of the Securities Act, Rule 506 of Regulation D, Rule 701 under the Securities Act and section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Stock as contemplated by the Plan, shall be exempt from the registration requirements of section 5 of the Securities Act.  In addition, under section 1145 of

the Bankruptcy Code, the Section 1145 Securities shall be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any other applicable regulatory approval.  The MIP Securities may not be sold except pursuant to an effective registration statement or pursuant to an applicable exemption from the registration requirements of the Securities Act.

42.     **Notices of Confirmation and Effective Date.**  The Reorganized Debtors shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit A** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Equity Interests and the Core Notice Parties within fifteen (15) Business Days after the date of entry of this Confirmation Order.  As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.  The notice of the Effective Date may be included in the Confirmation Order Notice.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been

53

informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The

above-referenced notices are adequate under the particular circumstances of these chapter 11

cases and no other or further notice is necessary.

43.     **Failure of Consummation.**  If the Effective Date does not occur, then: (a)

the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the

Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any

document or agreement executed pursuant to the Plan will be null and void in all respects; and

(c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims, Equity

Interests, or Causes of Action, (ii) prejudice in any manner the rights of any Debtor or any other

Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by

any Debtor or any other Entity.

44.     **Termination of the Restructuring Support Agreement.**  On the

Effective Date, the Restructuring Support Agreement will terminate in accordance with Section

8(e) thereof.

45.     **Substantial Consummation.**  On the Effective Date, the Plan shall be

deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

46.     **Waiver of Stay.**  For good cause shown, the stay of this Confirmation

Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be

effective and enforceable immediately upon its entry by the Court.

47.     **References to and Omissions of Plan Provisions.**  References to articles,

sections, and provisions of the Plan are inserted for convenience of reference only and are not

intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

48. **Headings.** Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

49. **Effect of Conflict.** This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

50. **Resolution of Informal Objection of Chubb Companies**.

Notwithstanding anything to the contrary in the Restructuring Support Agreement, the Regions Letter of Credit Agreement, the Disclosure Statement, the Plan, the Plan Supplement, any Plan Documents, any Plan Schedule,  Exit Facility Documents, the Confirmation Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, requires a party to opt out of releases, or confers Bankruptcy Court jurisdiction): (a) on the Effective Date, the Reorganized Debtors shall assume the Chubb Insurance Program in its entirety pursuant to sections 105 and 365 of the Bankruptcy Code and can only assign the Chubb Insurance Program subject to the terms off the Chubb Insurance

Program and applicable non-bankruptcy law; (b) the Chubb Insurance Program (including any and all letters of credit and other collateral and security provided in relation thereto) and all debts, obligations, and liabilities of the Debtors (and/or the Reorganized Debtors, as applicable) and the Chubb Companies thereunder, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect; (c) nothing therein shall alter the terms and conditions of the Chubb Insurance Program and any rights and obligations thereunder shall be determined under the Chubb Insurance Program and applicable non-bankruptcy law as if the Chapter 11 Cases had not occurred; (d) claims covered by the Chubb Insurance Program and the claims of the Chubb Companies under the Chubb Insurance Program whether arising before or after the Effective Date shall be paid in full in accordance with the terms of the Chubb Insurance Program, regardless of when such amounts are or shall become liquidated, due or paid without the need or requirement for the Chubb Companies to file any claim, motion or application for allowance or payment or otherwise object to any asserted Cure Amount; (e) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) subject to and in accordance with the terms of the Chubb Insurance Program, claimants with valid workers' compensation claims or direct action claims against any of the Chubb Companies under applicable non-bankruptcy law to proceed with their claims; (II) subject to and in accordance with the terms of the Chubb Insurance Program, the Chubb Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business  (A) workers' compensation claims,

(B) claims where a claimant asserts a direct claim against any of the Chubb Companies under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the Plan injunctions to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) subject to and in accordance with the terms of the Chubb Insurance Program, the Chubb Companies to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors, as applicable).  For purposes of this paragraph, the following definitions apply:  (i) "Chubb Companies" means ACE American Insurance Company, Westchester Fire Insurance Company, Indemnity Insurance Company of North America, Federal Insurance Company, Executive Risk Indemnity and any respective predecessors and/or affiliates thereof and (ii) "Chubb Insurance Program" means all insurance policies that have been issued by any of the Chubb Companies at any time to or provide coverage to any of the Debtors or their predecessors and all agreements, documents or instruments relating thereto.

51.    **Resolution of Informal Objection of United States of America.**

Notwithstanding any provision in the Plan, this Order or the related Plan documents, nothing discharges or releases the Debtors, the Reorganized Debtors or any non-debtor from any claim, liability or cause of action of the United States or any State or impairs the ability of the United States or any State to pursue any claim, liability or cause of action against any Debtor,

Reorganized Debtor or non-debtor.  Contracts, leases, covenants, operating rights agreements or other interests or agreements with the United States or any State shall be paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law.  All claims, liabilities, or causes of action of or to the United States or any State shall survive the bankruptcy case as if the case had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights or claims would have been resolved or adjudicated if the bankruptcy cases had not been commenced.  Without limiting the foregoing, for the avoidance of doubt: (1) the United States and any State shall not be required to file any claims in the Debtors' bankruptcy cases in order to be paid on account of any claim, liability or cause of action; (2) nothing shall affect or impair the exercise of United States' or any State's police and regulatory powers against the Debtors and/or the Reorganized Debtors; (3) nothing shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any federal or state interests and (4) nothing shall affect or impair the United States' or any State's rights to assert setoff and recoupment against the Debtors and/or the Reorganized Debtors and such rights are expressly preserved; and (5) nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, causes of action, rights of setoff or recoupment, rights to appeal tax assessments, or other legal or equitable defenses that the Debtors have under non-bankruptcy law in connection with any claim, liability or cause of action of the United States.

52.     **Resolution of Informal Objection of Texas Comptroller.**  Nothing in the Plan or the Confirmation Order discharges or releases the Debtors or any other entity from any debt, obligation, claim, liability or cause of action of the Texas Comptroller of Public Accounts (the "Texas Comptroller") or impairs the ability of the Texas Comptroller to pursue any debt, obligation, claim, liability or cause of action against any Debtor, Reorganized Debtor or non-Debtor.  All claims, liabilities, or causes of action of, or to, the Texas Comptroller shall survive the Chapter 11 Cases as if the cases had not been commenced and be paid and determined in the manner and by the administrative or judicial tribunals in which such rights or claims would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced.  Without limiting the foregoing, for the avoidance of doubt: (1) the Texas Comptroller shall not be required to file any claims in the Debtors' Chapter 11 Cases; (2) nothing shall affect or impair the ability of the Texas Comptroller to make demand on, be paid by, or otherwise pursue any sureties that are jointly and severally liable with the Debtors and/or the Reorganized Debtors for any debt owed to the Texas Comptroller; (3) nothing shall affect or impair the exercise of the Texas Comptroller's police and regulatory powers against the Debtors and/or the Reorganized Debtors; (4) nothing shall affect or impair the Texas Comptroller's rights to assert setoff and recoupment, including contingent or unliquidated rights, against the Debtors and/or the Reorganized Debtors; and (5) nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, causes of action, rights of setoff or recoupment, rights to appeal tax assessments, or other legal or equitable defenses that the Debtors have under non-bankruptcy law in connection with any claim, liability or cause of action of the Texas Comptroller.

53.     **Resolution of Objection of Lee Parties.**

a.      Prior to the Petition Date, Carroll L. Lee, individually; Peggy G. Lee,

individually; Carroll L. Lee and Peggy G. Lee d/b/a Cedar Mountain Ranch; Lee Concho Valley

Family, L.P.; Leeco Properties, Inc.; Sandra Cagle; Jerry D. Lee; Larry G. Lee; and Matthew

Lee, creditors and parties-in-interest (collectively the "Lee Parties"), filed a lawsuit in state court

in Coke County, Texas styled Cause No. CV1604622, in the 51st Judicial District Court of Coke

County, Texas, styled *Carroll L. Lee, individually, et al. v. Memorial Production Operating,*

*LLC, et al.* ("State Court Case") to recover real property, as well as personal damages, losses,

and other relief allegedly caused by the failure and blowout of a saltwater disposal well against

multiple defendants, including Debtor C.C. Forbes, LLC (the "Lee Parties' Claims").  The Lee

Parties' Claims asserted in the State Court Case will not be resolved or otherwise addressed in

any way by the Bankruptcy Court, or the federal District Court, but shall be resolved in the State

Court Case as if the Debtors' bankruptcy cases had not been filed.  Accordingly neither the

Debtors nor the Reorganized Debtors or any other person or entity may file an objection in the

Bankruptcy Court to the claims asserted in the State Court Case, since the resolution of the Lee

Parties' Claims will occur exclusively and entirely in the State Court Case. The automatic stay

provided under section 362 of the Bankruptcy Code, or any injunction provided for in the Plan,

or in this Confirmation Order, shall not apply to the State Court Case. Accordingly,

notwithstanding the Injunction set forth in Article XII(D) of the Plan (the "Injunction"), no such

Injunction nor any other provision of the Plan or the Confirmation Order that provides for any

injunction shall be applicable to (i) the Lee Parties, (ii) the Lee Parties' Claims, and/or (iii) the

State Court Case.  Upon the Effective Date of the Plan, there shall be no stay or injunction

arising out of the Debtors' chapter 11 cases and/or the Plan that will stay or enjoin the State Court Case from proceeding to judgment at this time.

b.       The Debtors reserve any and all rights to contest the Lee Parties' Claims in the State Court Case, including, without limitation, to assert any counterclaims or other causes of action against the Lee Parties under applicable non-bankruptcy law.  Nothing in the Plan or Confirmation Order shall preclude or prejudice, either (i) the Lee Parties from seeking and/or obtaining a judgment or recovery against the Debtors or the Reorganized Debtors and prosecuting the State Court Case to final judgment; (ii) or the Debtors' rights and defenses in connection with the foregoing, provided, however, that neither the Debtors, nor the Reorganized Debtors, nor their respective representatives, successors, or assigns will contest the Lee Parties' Claims based on the Debtors' chapter 11 cases, any term(s) or provision(s) of the Plan or any term(s) or provision(s) of the Confirmation Order.

c.       There will be no estimation or similar procedure of any kind in the Bankruptcy Court regarding the Lee Parties' Claims asserted in the State Court Case.

d.       The Lee Parties' Claims asserted in the State Court Case may be settled by one or more of the Debtors, the Reorganized Debtors, and their applicable insurers (as applicable) as though the Debtors' chapter 11 cases had not been filed.

e.       To the extent any of the Lee Parties' Claims asserted in the State Court Case are allowed, (i) pursuant to a settlement between the Reorganized Debtors and Lee Parties, or (ii) by entry of a final judgment in the State Court Case that is not subject to further appeal, then, in either case, the same shall constitute an Allowed Class 5 Claim (the "Allowed Class 5 Claim"). The Allowed Class 5 Claim shall be satisfied through either of the following two options:  (i) payment of the Allowed Class 5 Claim by the Reorganized Debtors (or by one or more insurers

of the applicable Reorganized Debtor(s) if applicable) to the Lee Parties within thirty (30) days

from which the Lee Parties' Claims become an Allowed Class 5 Claim; or, alternatively, (ii) the

Lee Parties shall be entitled to enforcement of any available judgment remedies available to them

against the Debtors and the Reorganized Debtors with respect to any Allowed Class 5 Claim

under applicable law as though the Debtors' chapter 11 cases had not been filed, provided,

however, that the Debtors and Reorganized Debtors reserve any and all rights, defenses and

remedies in connection therewith available to them under applicable nonbankruptcy law.

      f.     Nothing in the Plan or Confirmation Order shall preclude or prejudice the Lee

Parties from pursuing recovery on or payment from the proceeds of any applicable insurance

policy(ies), or impair the rights and applicable defenses of the issuers of such policies under

applicable non-bankruptcy law.

      g.     Despite any provision of the Plan to the contrary, the Lee Parties are entitled to

recover pre-judgment interest and post-judgment interest on the Lee Parties' Claims solely to the

extent permitted and allowed under applicable Texas law. The Debtors and the Reorganized

Debtors reserve any and all rights and defenses with respect to the allowance or disallowance of

pre-judgment interest and post-judgment interest on the Lee Parties' Claims on any and all

available grounds available to them under Texas law.

      h.     Nothing in the Plan or the Confirmation Order shall operate to impair, waive or

estop the Lee Parties from asserting that the Bankruptcy Court lacks jurisdiction over the Lee

Parties' Claims or that the Bankruptcy Court is not authorized to enter final orders or judgment

on the Lee Parties' Claims.  Nothing in the Plan or Confirmation Order shall be construed to

constitute consent by the Lee Parties to the entry of final orders by the Bankruptcy Court on the

Lee Parties' Claims.

i.      The provisions of the Plan purporting to require a party with a claim against any of the Debtors to specify how it disagrees with how the Debtors' books and records address the claim shall not apply to the Lee Parties. *See, e.g.,* Plan Article VIII (A).

j.      For avoidance of doubt, Article XV (N) of the Plan specifying that New York law applies shall not apply to the Lee Parties, the Lee Parties' Claims, or the State Court Case.

k.      These paragraphs (a-k) have been negotiated between the Debtors and the Lee Parties.  The Lee Parties reserve the right to object to the Plan and/or any proposed order to confirm it, and/or to request revision of these paragraphs (a-k), based on any changes to the Plan, the terms of the Plan Supplement, or other parts of the proposed order to confirm the Plan, that were made known to the Lee Parties' counsel in writing by the Debtors' counsel after the time the negotiations between the Debtors' counsel and the Lee Parties' counsel concluded regarding these paragraphs (a-k).

l.      Paragraphs (a)-(k) hereof control over any inconsistent provision of the Plan, this Confirmation Order, or any other document in the Debtors' chapter 11 cases.

54.      **Resolution of Objection of Javier Martinez.**  Notwithstanding Article VIII of the Plan or any other provision in the Plan that addresses claims estimation, Martinez's claims are specifically excluded from estimation under Article VIII of the Plan or otherwise and neither the Debtors, the Reorganized Debtors nor any of their respective representatives, successors or assigns shall seek the estimation of Martinez's claims.  Notwithstanding the Injunction set forth in Article XII.D. of the Plan (the "Injunction"), upon the Effective Date, neither such Injunction nor any other provision of the Plan or Confirmation Order that provides for any injunction shall be applicable to (i) Martinez, (ii) Martinez's claims, and/or (iii) the State Court Action.  Upon the Effective Date, there shall be no stay or injunction arising out of the

Bankruptcy Case and/or the Plan that will stay or enjoin the State Court Action from proceeding to judgment upon the Effective Date of the Plan.  Notwithstanding the procedures set forth in Article VIII of the Plan titled "Procedures for Resolving Contingent, Unliquidated and Disputed Claims," with regard to (i) Martinez, (ii) Martinez's claims, and/or (iii) the State Court Action, nothing in the Plan or the Confirmation Order shall operate to impair, waive or estop Martinez from asserting that the Bankruptcy Court lacks jurisdiction over the Martinez's claims or that the Bankruptcy Court is not authorized to enter final orders or judgment on Martinez's claims. Nothing in the Plan or Confirmation Order shall be construed to constitute consent by Martinez to the entry of final orders by the Bankruptcy Court on his claims.  Upon entry of a final, non-appealable order adjudicating the Martinez's claims, any ordered dollar amount of such judgment including any and all damages awarded of any kind, interest and attorneys' fees in favor of the Martinez shall constitute an Allowed Claim in the Bankruptcy Case.  The Debtors reserve any and all rights to contest Martinez's claims including, without limitation, to assert any counterclaims or other causes of action against Martinez under applicable law.  Nothing in the Plan or Confirmation Order shall preclude or prejudice, either (i) Martinez from seeking and/or obtaining a judgment or recovery against the Debtors or the Reorganized Debtors and prosecuting the State Court Litigation to final judgment; (ii) or the Debtors' rights and defenses in connecting with the foregoing.  Nothing in the Plan or Confirmation Order shall preclude or prejudice Martinez from pursuing recovery on or payment from the proceeds of any applicable insurance policy(ies), or impair the rights and applicable defenses of the issuers of such policies. The foregoing language also resolves the relief requested in the *Javier Martinez's Objection to the Debtors' Prepackaged Joint Chapter 11 Plan and Motion for Relief from Injunction* [Docket No. 148] (the "Motion").  Upon the Effective Date, the Motion shall be deemed withdrawn.

64

55.     **Resolution of Objection of Felix Venegas**.

a.      Prior to the Petition Date, Felix Venegas, Jr. ("Venegas") filed a lawsuit in state court in El Paso County, Texas styled Cause No. 2017DCV0605; *Felix Venegas, Jr. v. Miguel Angel Hernandez*; in the 168th Judicial Court of El Paso County, Texas ("State Court Case") for injuries allegedly arising from an automobile collision allegedly caused by Miguel Hernandez while he was alleged to be in the course and scope of his employment with Forbes Energy Services, Ltd. (the "Venegas Claims").  The Venegas Claims asserted in the State Court Case will not be resolved or otherwise addressed in any way by the Bankruptcy Court, or the federal District Court, but shall be resolved in the State Court Case as if the Debtors' bankruptcy cases had not been filed.  Accordingly neither the Debtors nor the Reorganized Debtors or any other person or entity may file an objection in the Bankruptcy Court to the claims asserted in the State Court Case, since the resolution of the Venegas Claims will occur exclusively and entirely in the State Court Case. The automatic stay provided under section 362 of the Bankruptcy Code, or any injunction provided for in the Plan, or in this Confirmation Order, shall not apply to the State Court Case. Accordingly, notwithstanding the Injunction set forth in Article XII(D)  of the Plan (the "Injunction"), no such Injunction nor any other provision of the Plan or the Confirmation Order that provides for any injunction shall be applicable to (i) Venegas, (ii) the Venegas Claims, and/or (iii)  the State Court Case.  Upon the Effective Date of the Plan, there shall be no stay or injunction arising out of the Debtors' chapter 11 cases and/or the Plan that will stay or enjoin the State Court Case from proceeding to judgment at this time.

b.     The Debtors reserve any and all rights to contest the Venegas Claims in the State Court Case, including, without limitation, to assert any counterclaims or other causes of action against Venegas under applicable non-bankruptcy law.  Nothing in the Plan or Confirmation Order shall preclude or prejudice, either (i) Venegas from seeking and/or obtaining a judgment or recovery against the Debtors or the Reorganized Debtors and prosecuting the State Court Case to final judgment; (ii) or the Debtors' rights and defenses in connection with the foregoing, provided, however, that neither the Debtors, nor the Reorganized Debtors, nor their respective representatives, successors, or assigns will contest the Venegas Claims based on the Debtors' chapter 11 cases, any term(s) or provision(s) of the Plan or any term(s) or provision(s) of the Confirmation Order.

c.     There will be no estimation or similar procedure of any kind in the Bankruptcy Court regarding the Venegas Claims asserted in the State Court Case.

d.     The Venegas Claims asserted in the State Court Case may be settled by one or more of the Debtors, the Reorganized Debtors, and their applicable insurers (as applicable) as though the Debtors' chapter 11 cases had not been filed.

e.     To the extent any of the Venegas Claims asserted in the State Court Case are allowed, (i) pursuant to a settlement between the Reorganized Debtors and Venegas, or (ii) by entry of a final judgment in the State Court Case that is not subject to further appeal, then, in either case, the same shall constitute an Allowed Class 5 Claim (the "Allowed Class 5 Claim"). The Allowed Class 5 Claim shall be satisfied through either of the following two options:  (i) payment of the Allowed Class 5 Claim by the Reorganized Debtors (or by one or more insurers

66

of the applicable Reorganized Debtor(s) if applicable) to Venegas within thirty (30) days from which the Venegas  Claims become an Allowed Class 5 Claim; or, alternatively, (ii) Venegas shall be entitled to enforcement of any available judgment remedies available to him against the Debtors and the Reorganized Debtors with respect to any Allowed Class 5 Claim under applicable law as though the Debtors' chapter 11 cases had not been filed, *provided, however*, that the Debtors and Reorganized Debtors reserve any and all rights, defenses and remedies in connection therewith available to them under applicable nonbankruptcy law.

f.      Nothing in the Plan or Confirmation Order shall preclude or prejudice Venegas from pursuing recovery on or payment from the proceeds of any applicable insurance policy(ies), or impair the rights and applicable defenses of the issuers of such policies under applicable non-bankruptcy law.

g.      Despite any provision of the Plan to the contrary, Venegas is entitled to recover pre-judgment interest and post-judgment interest on the Venegas Claims solely to the extent permitted and allowed under applicable Texas law. The Debtors and the Reorganized Debtors reserve any and all rights and defenses with respect to the allowance or disallowance of pre-judgment interest and post-judgment interest on Venegas Claims on any and all available grounds available to them under Texas law.

h.      Nothing in the Plan or the Confirmation Order shall operate to impair, waive or estop Venegas from asserting that the Bankruptcy Court lacks jurisdiction over the Venegas Claims or that the Bankruptcy Court is not authorized to enter final orders or judgment on the

Venegas's claims.  Nothing in the Plan or Confirmation Order shall be construed to constitute consent by Venegas to the entry of final orders by the Bankruptcy Court on the Venegas Claims.

i.      The provisions of the Plan purporting to require a party with a claim against any of the Debtors to specify how it disagrees with how the Debtors' books and records address the claim shall not apply to Venegas.  *See, e.g.*, Plan Article VIII (A).

j.      For avoidance of doubt, Article XV (N) of the Plan specifying that New York law applies shall not apply to Venegas, the Venegas Claims, or the State Court Case.

k.      These paragraphs (a-k) have been negotiated between the Debtors and Venegas. Venegas reserves the right to object to the Plan and/or any proposed order to confirm it, and/or to request revision of these paragraphs (a-k), based on any changes to the Plan, the terms of the Plan Supplement, or other parts of the proposed order to confirm the Plan, that were made known to Venegas's counsel in writing by the Debtors' counsel after the time the negotiations between the Debtors' counsel and Venegas's counsel concluded regarding these paragraphs (a-k).

l.      Paragraphs (a)-(k) hereof control over any inconsistent provision of the Plan, this Confirmation Order, or any other document in the Debtors' chapter 11 cases.

56.      **Resolution of Objection of Reynaldo Davila, et al**.

a.      Prior to the Petition Date, Reynaldo Davila, Jr., Yolanda Herrera, and Valerie Dragustinovis, Individually and As Next Friend of Madelyn Flores, Sophia Davila, and Reynaldo Davila, III Minor (the "Davila Parties") filed a lawsuit in state court in Nueces County, Texas styled Cause No. 2016CCV-60769-4, Reynaldo Davila, Jr., et al v. Guadalupe Maravilla, Forbes Energy Services Ltd., and C.C. Forbes, LLC; in the County Court at Law No. 4, Nueces County,

Texas  ("State Court Case") regarding alleged injuries sustained as a result of the alleged

negligence of the Defendants in the State Court Case (the "Davila Claims").  The Davila Claims

asserted in the State Court Case will not be resolved or otherwise addressed in any way by the

Bankruptcy Court, or the federal District Court, but shall be resolved in the State Court Case as if

the Debtors' bankruptcy cases had not been filed.  Accordingly neither the Debtors nor the

Reorganized Debtors or any other person or entity may file an objection in the Bankruptcy Court

to the claims asserted in the State Court Case, since the resolution of the Davila Claims will

occur exclusively and entirely in the State Court Case. The automatic stay provided under

section 362 of the Bankruptcy Code, or any injunction provided for in the Plan, or in this

Confirmation Order, shall not apply to the State Court Case. Accordingly, notwithstanding the

Injunction set forth in Article XII(D)  of the Plan (the "Injunction"), no such Injunction nor any

other provision of the Plan or the Confirmation Order that provides for any injunction shall be

applicable to (i) the Davila Parties, (ii) the Davila Claims, and/or (iii)  the State Court Case.

Upon the Effective Date of the Plan, there shall be no stay or injunction arising out of the

Debtors' chapter 11 cases and/or the Plan that will stay or enjoin the State Court Case from

proceeding to judgment at this time.

      b.      The Debtors reserve any and all rights to contest the Davila Claims in the State

Court Case, including, without limitation, to assert any counterclaims or other causes of action

against the Davila Parties under applicable non-bankruptcy law.  Nothing in the Plan or

Confirmation Order shall preclude or prejudice, either (i) the Davila Parties from seeking and/or

obtaining a judgment or recovery against the Debtors or the Reorganized Debtors and

prosecuting the State Court Case to final judgment; (ii) or the Debtors' rights and defenses in connection with the foregoing, provided, however, that neither the Debtors, nor the Reorganized Debtors, nor their respective representatives, successors, or assigns will contest the Davila Claims based on the Debtors' chapter 11 cases, any term(s) or provision(s) of the Plan or any term(s) or provision(s) of the Confirmation Order.

c.      There will be no estimation or similar procedure of any kind in the Bankruptcy Court regarding the Davila Claims asserted in the State Court Case.

d.      The Davila Claims asserted in the State Court Case may be settled by one or more of the Debtors, the Reorganized Debtors, and their applicable insurers (as applicable) as though the Debtors' chapter 11 cases had not been filed.

e.      To the extent any of the Davila Claims asserted in the State Court Case are allowed, (i) pursuant to a settlement between the Reorganized Debtors and Davila Parties, or (ii) by entry of a final judgment in the State Court Case that is not subject to further appeal, then, in either case, the same shall constitute an Allowed Class 5 Claim (the "Allowed Class 5 Claim"). The Allowed Class 5 Claim shall be satisfied through either of the following two options:  (i) payment of the Allowed Class 5 Claim by the Reorganized Debtors (or by one or more insurers of the applicable Reorganized Debtor(s) if applicable) to the Davila Parties within thirty (30) days from which the Davila Claims become an Allowed Class 5 Claim; or, alternatively, (ii) the Davila Parties shall be entitled to enforcement of any available judgment remedies available to them against the Debtors and the Reorganized Debtors with respect to any Allowed Class 5 Claim under applicable law as though the Debtors' chapter 11 cases had not been filed, provided,

however, that the Debtors and Reorganized Debtors reserve any and all rights, defenses and remedies in connection therewith available to them under applicable nonbankruptcy law.

      f.      Nothing in the Plan or Confirmation Order shall preclude or prejudice the Davila Parties from pursuing recovery on or payment from the proceeds of any applicable insurance policy(ies), or impair the rights and applicable defenses of the issuers of such policies under applicable non-bankruptcy law.

      g.      Despite any provision of the Plan to the contrary, the Davila Parties are entitled to recover pre-judgment interest and post-judgment interest on the Davila Claims solely to the extent permitted and allowed under applicable Texas law. The Debtors and the Reorganized Debtors reserve any and all rights and defenses with respect to the allowance or disallowance of pre-judgment interest and post-judgment interest on the Davila Claims on any and all available grounds available to them under Texas law.

      h.      Nothing in the Plan or the Confirmation Order shall operate to impair, waive or estop the Davila Parties from asserting that the Bankruptcy Court lacks jurisdiction over the Davila Claims or that the Bankruptcy Court is not authorized to enter final orders or judgment on the Davila Parties' claims.  Nothing in the Plan or Confirmation Order shall be construed to constitute consent by the Davila Parties to the entry of final orders by the Bankruptcy Court on the Davila Claims.

      i.      The provisions of the Plan purporting to require a party with a claim against any of the Debtors to specify how it disagrees with how the Debtors' books and records address the claim shall not apply to the Davila Parties.  *See, e.g.,* Plan Article VIII (A).

71

j.      For avoidance of doubt, Article XV (N) of the Plan specifying that New York law applies shall not apply to the Davila Parties, the Davila Claims, or the State Court Case.

k.      These paragraphs (a-k) have been negotiated between the Debtors and the Davila Parties.  The Davila Parties reserve the right to object to the Plan and/or any proposed order to confirm it, and/or to request revision of these paragraphs (a-k), based on any changes to the Plan, the terms of the Plan Supplement, or other parts of the proposed order to confirm the Plan, that were made known to the Davila Parties' counsel in writing by the Debtors' counsel after the time the negotiations between the Debtors' counsel and the Davila Parties' counsel concluded regarding these paragraphs (a-k).

l.      Paragraphs (a) – (k) hereof control over any inconsistent provision of the Plan, this Confirmation Order, or any other document in the Debtors' chapter 11 cases.

57.      **Resolution of Objections of Orlando Rey Mireles and Jose Reynaldo San Miguel Jr**.  Unless otherwise noted in the Plan, defined terms used in this paragraph have the meanings ascribed in the objection of *Orlando Rey Mireles and Jose Reynaldo San Miguel, Jr.'s Notice of Adoption by Reference of Lee Parties' Objection to Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 152] (the "Mireles/San Miguel Objection"). Notwithstanding Article VIII of the Plan or any other provision in the Plan that addresses claims estimation, the claims of Orlando Rey Mireles ("Mireles") and Jose Reynaldo San Miguel, Jr. ("San Miguel") are specifically excluded from estimation under Article VIII of the Plan or otherwise and neither the Debtors, the Reorganized Debtors nor any of their respective representatives, successors or assigns shall seek the estimation of any claims of Orlando Rey

72

Mireles ("Mireles Claims") and Jose Reynaldo San Miguel, Jr. ("San Miguel Claims").  For avoidance of doubt, the Mireles Claims and San Miguel Claims are Unimpaired pursuant to the Plan.  Notwithstanding the Injunction set forth in Article XII.D. of the Plan (the "Injunction"), upon the Effective Date, neither such Injunction nor any other provision of the Plan or Confirmation Order that provides for any injunction shall be applicable to (i) Mireles; (ii) Mireles' Claims; and/or (iii) any pending action in the 79th Judicial District Court, Jim Wells County, Texas, with respect to Mireles Claims (the "Jim Wells County State Court Case"); (iv) San Miguel; (v) the San Miguel Claims; and/or (vi) any pending action in the 95th Judicial District Court, Dallas County, Texas, with respect to the San Miguel Claims or the investigation of potential claims ("Dallas County State Court Case") or any other court wherein claims may be filed by San Miguel arising out of the San Miguel Claim.  Upon the Effective Date, there shall be no stay or injunction arising out of the Debtors' chapter 11 cases and/or the Plan that will stay or enjoin the Jim Wells County State Court Case or the Dallas County State Court Case or any other court wherein claims may be filed by San Miguel arising out of the San Miguel Claims from proceeding to judgment upon the Effective Date of the Plan.  Notwithstanding the procedures set forth in Article VIII of the Plan titled "Procedures for Resolving Contingent, Unliquidated and Disputed Claims," with regard to (i) Mireles, (ii) the Mireles Claims, (iii) the Jim Wells County State Court Case, (iv) San Miguel, (v) the San Miguel Claims, and/or (vi) the Dallas County State Court Case or any other court wherein claims may be filed by San Miguel arising out of the San Miguel Claims, nothing in the Plan or the Confirmation Order shall operate to impair, waive or estop Mireles or San Miguel from asserting that the Bankruptcy Court lacks

73

jurisdiction over the Mireles Claims or San Miguel Claims or that the Bankruptcy Court is not authorized to enter final orders or judgment on the Mireles Claims or San Miguel Claims. Nothing in the Plan or Confirmation Order shall be construed to constitute consent by Mireles or San Miguel to the entry of final orders by the Bankruptcy Court on their claims.  Upon entry of a final, non-appealable order adjudicating Mireles' Claims and/or San Miguel's Claims, any ordered dollar amount of such judgment including any and all damages awarded of any kind, interest and attorneys' fees in favor of Mireles and/or San Miguel shall constitute an Allowed Claim in the Debtors' chapter 11 cases.  The Debtors reserve any and all rights to contest the Mireles Claims, the San Miguel Claims, the Jim Wells County State Court Case, the Dallas County State Court Case, or any other court wherein claims may be filed by San Miguel arising out of the San Miguel Claim, including, without limitation, all rights to assert any counterclaims or other causes of action with respect to the foregoing under applicable law.  Nothing in the Plan or Confirmation Order shall preclude or prejudice, either (i) Mireles and/or San Miguel from seeking and/or obtaining a judgment or recovery against the Debtors or the Reorganized Debtors and prosecuting the Jim Wells County State Court Case and/or the Dallas County State Court Case, or any other court wherein claims may be filed by San Miguel arising out of the San Miguel Claims, to final judgment; (ii) or the Debtors' rights and defenses in connecting with the foregoing.  Nothing in the Plan or Confirmation Order shall preclude or prejudice Mireles and/or San Miguel from pursuing recovery on or payment from the proceeds of any applicable insurance policy(ies), or impair the rights and applicable defenses of the issuers of such policies. Furthermore, for avoidance of doubt, nothing in the Plan or Confirmation Order shall constitute a

discharge of any liability of Debtors to Mireles and/or San Miguel for any portion of Mireles'

Claims and/or San Miguel's Claims not covered by applicable insurance policy(ies), if any. The

Mireles/San Miguel Objection is deemed withdrawn.  The foregoing language also resolves the

relief requested in the *Motion of Jose Reynaldo San Miguel Jr., for Relief from the Automatic*

*Stay* (the "Stay Relief Motion").  Upon the Effective Date, the Stay Relief Motion shall be

deemed withdrawn.

58.    **Resolution of Objection of Gonzalez Parties.**  Unless otherwise noted in

the Plan, defined terms used in this paragraph have the meanings ascribed in the *Objection to*

*Disclosure Statement and Joint Prepackaged Plan of Reorganization Filed by Francisco Javier*

*Gonzalez, Individually and As Representative of Estate of Hortencia Monroy-Hernandez,*

*Deceased, and As of Next Friend of KYG, a Minor, and Adan Monroy-Hernandez and Maria*

*Felix Hernandez Ledezma*  [Docket No. 189-1] (the "Gonzalez Objection") filed by Francisco

Javier Gonzalez, Individually and As Representative of Estate of Hortencia Monroy-Hernandez,

Deceased, and As of Next Friend of KYG, a Minor, and Adan Monroy-Hernandez and Maria

Feliz Hernandez Ledezma (collectively, the "Gonzalez Parties").  Notwithstanding Article VIII

of the Plan or any other provision in the Plan that addresses claims estimation, the Gonzalez

Parties' claims are specifically excluded from estimation under Article VIII of the Plan or

otherwise and neither the Debtors, the Reorganized Debtors nor any of their respective

representatives, successors or assigns shall seek the estimation of any claims (the "Gonzalez

Parties' Claims").  Notwithstanding the Injunction set forth in Article XII.D. of the Plan (the

"Injunction"), upon the Effective Date, neither such Injunction nor any other provision of the

75

Plan or Confirmation Order that provides for any injunction shall be applicable to (i) the Gonzalez Parties, (ii) the Gonzalez Parties' Claims, and/or (iii) the State Court Litigation (as defined in the Gonzalez Objection). Upon the Effective Date, there shall be no stay or injunction arising out of the Debtors' chapter 11 cases and/or the Plan that will stay or enjoin the State Court Litigation from proceeding to a final judgment or settlement. The Gonzalez Parties shall be authorized to proceed with the State Court Litigation on the earlier of the Effective Date or the entry of an order modifying the automatic stay imposed pursuant to 11 U.S.C. §362 as to the Gonzalez Claimants. Notwithstanding the procedures set forth in Article VIII of the Plan titled "Procedures for Resolving Contingent, Unliquidated and Disputed Claims," with regard to (i) the Gonzalez Parties, (ii) the Gonzalez Parties' Claims, and/or (iii) the State Court Litigation, nothing in the Plan or the Confirmation Order shall operate to impair, waive or estop the Gonzalez Parties from asserting that the Bankruptcy Court lacks jurisdiction over the Gonzalez Parties' claims or that the Bankruptcy Court is not authorized to enter final orders or judgment on the Gonzalez Parties' Claims. Nothing in the Plan or Confirmation Order shall be construed to constitute consent by the Gonzalez Parties to the entry of final orders by the Bankruptcy Court on the allowance of their claims. Upon entry of a final, non-appealable order adjudicating the Gonzalez Parties' Claims, any ordered dollar amount of such judgment including any and all damages awarded of any kind, interest and attorneys' fees in favor of the Gonzalez Parties shall constitute an Allowed Class 5 Claim in the Debtors' chapter 11 cases. The Debtors reserve any and all rights to contest the Gonzalez Parties' Claims in the State Court Litigation including, without limitation, to assert any counterclaims or other causes of action against the Gonzalez

Parties under applicable law.  Nothing in the Plan or Confirmation Order shall preclude or prejudice, either (i) the Gonzalez Parties from seeking and/or obtaining a judgment or recovery against the Debtors or the Reorganized Debtors and prosecuting the State Court Litigation to final judgment; (ii) or the Debtors' rights and defenses in connection with the foregoing.  Nothing in the Plan or Confirmation Order shall preclude or prejudice the Gonzalez Parties from pursuing recovery on or payment from the proceeds of any applicable insurance policy(ies), or impair the rights and applicable defenses of the issuers of such policies.  For avoidance of doubt, nothing in the Plan, the Confirmation Order, or any document related to the foregoing shall act to discharge, waive, or otherwise modify the Gonzales Claims.  The Gonzales Parties, the Debtors and Reorganized Debtors reserve any all of their respective rights, defenses and claims with respect to the Gonzalez Claims.  The Gonzalez Objection is deemed withdrawn.

59.  **Resolution of McChristian Objections**.  Unless otherwise noted in the Plan, capitalized terms used in this paragraph have the meanings used in the *Davis McChristian, Elmer McChristian, and Taylor Whitaker's Objection to Debtors' Pre-Packaged Joint Plan of Reorganization*  [Docket No. 153-1]; *Davis McChristian, Elmer McChristian, and Taylor Whitaker's Objection to Debtors' Notice of (I) Rejection of Contracts And Leases, and (II) Deadline to Object Thereto* [Docket No. 154];  and *Davis McChristian, Elmer McChristian, and Taylor Whitaker's Objection to Debtors' Pre-Packaged Joint Plan of Reorganization* [Docket No. 155] (collectively, the "McChristian Objections").  Nothing in the Plan or the Confirmation Order shall operate to impair either the claims of the Lessors against any of the Debtors or any non-debtor party or the Debtors' or any non-debtor party's applicable defenses to such claims.

Any of Lessors' claims against any of the Debtors survive the bankruptcy case as if the case had not been commenced and be determined in accordance with applicable law.  Without limiting the foregoing, for the avoidance of doubt, the Lessors shall not be required to file any claims in the Debtors' bankruptcy cases in order to be paid on account of any claim, liability or cause of action.

60.     **Retention of Jurisdiction.**  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these chapter 11 cases, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.  Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Court's retention of jurisdiction shall not govern the enforcement of either the Regions Letter of Credit Agreement or the Exit Facility or the documents executed in connection therewith or any liens, rights, or remedies related thereto except to the extent that this Confirmation Order has been vacated or reversed, but instead, such enforcement shall be governed as set forth in the Regions Letter of Credit Agreement and the Exit Facility Documents, respectively.


Dated: March 29, 2017

                                                              _____

                                                              DAVID R. JONES
                                                              UNITED STATES BANKRUPTCY JUDGE

DOCS_SF:92918.10 28707/001

## EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FORBES ENERGY SERVICES LTD., et al.,[1] | § | Case No. 17-20023 (DRJ) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | **Re:  Docket No. __** |

---

**NOTICE OF (I) ENTRY OF ORDER APPROVING DISCLOSURE STATEMENT
FOR, AND CONFIRMING, THE DEBTORS' PREPACKAGED JOINT
PLAN OF REORGANIZATION AND (II) OCCURRENCE OF EFFECTIVE DATE**

---

**PLEASE TAKE NOTICE** that on March [_], 2017, the Honorable David R. Jones, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), entered the *Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. __] (the "Confirmation Order") confirming the Plan[2] [Docket No. 9] and approving the Disclosure Statement [Docket No. 8] of the above-captioned debtors (the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on _____, 2017.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order and the Plan are available for inspection.  If you would like to obtain a copy of the Confirmation Order or the Plan, you may contact Kurtzman Carson Consultants LLC, the voting agent retained by the Debtors in these chapter 11 cases, by: (i) accessing the Debtors' restructuring website at http://www.kcclcc.net/forbes; (ii) calling the voting agent at (877) 634-7165 (toll free) or (424) 236-7221 (international); or (iii) email ForbesEnergyInfo@kccllc.com.  Parties may also obtain any documents filed in the chapter 11 cases for a fee via PACER at https://ecf.txs.uscourts.gov/.

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Forbes Energy Services Ltd. (1100); Forbes Energy Services LLC (6176); C.C. Forbes, LLC (5695); TX Energy Services, LLC (5843); and Forbes Energy International, LLC (6617).  The location of the Debtors' headquarters and service address is 3000 South Business Highway 281, Alice, TX 78332.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Prepackaged Joint Plan of Reorganization* [Docket No. 9] (as modified, amended, and including all supplements, the "Plan").

        **PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Articles X, XI and XII of the Plan.

        **PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, and any Holder of a Claim or Equity Interest and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

        **PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

        **PLEASE TAKE FURTHER NOTICE** that any Holder of Senior Unsecured Notes Claims receiving New Common Stock of Reorganized Parent in connection with the Plan who wishes to execute the Registration Rights Agreement and enjoy the benefits of the rights and protections included therein, please contact R. Clyde Parker, Jr. or Gabriel Gutierrez of Winstead PC at (281) 681-5900.

Dated: _____, 2017

SNOW SPENCE GREEN LLP
Phil Snow (TX Bar No. 18812600)
Kenneth Green (TX Bar No. 24036677)
2929 Allen Parkway, Ste. 2800
Houston, TX 77019
Telephone:  713/335-4800
Facsimile:  713/335-4902
Email:  philsnow@snowspencelaw.com
       kgreen@snowspencelaw.com

-and-

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (TX Bar No. 24002482)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  rpachulski@pszjlaw.com
      ikharasch@pszjlaw.com
      mlitvak@pszjlaw.com

Counsel for the Debtors